**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **NICOLE RENA MCCREA**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-cv-0808 (TSC) |
| | ) | |
| **DISTRICT OF COLUMBIA, et al.**, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

*Pro se* Plaintiff Nicole McCrea is a former firefighter with the District of Columbia Fire and Emergency Medical Services Department (EMS). She alleges that two fellow firefighters sexually assaulted her while she was on duty. (ECF No. 68, 2d Am. Compl. ¶¶ 1-4.) She claims that although she reported the incident, EMS managers, city employees and mental health professionals conspired to deny her requests to classify her subsequent behavioral health challenges as job-related injuries and to force her into retirement.

Various defendants have filed the following motions:

1) Council of the District of Columbia's Motion to Dismiss (ECF No. 75);

2) Police and Fire Clinic Associates, LLC ("PFC"), Dr. Olusola Malomo, Dr. Raquel Gordon and Dr. Marc Cottrell's Motion to Dismiss (ECF No. 71); and

3) Lois Hochhauser's Motion to Dismiss (ECF No. 69).

For the reasons set forth below, the court will GRANT all three Motions to Dismiss. [1]

---

[1] The court previously entered an Order granting the motions to dismiss. (*See* ECF No. 197.) This Memorandum Opinion explains the court's reasons for that Order.

## A.  BACKGROUND

### 1.  Factual Background[2]

McCrea alleges that while at work at the fire station on or around May 30, 2013, she was awakened "by aggressive movement and touching along her inner thigh."  (SAC ¶¶ 1-2.)[3]  She jumped in response and "the hand" fell "down, in between her legs," at which time she noticed movement near her bed and saw two individuals, one of whom she recognized as a co-worker, and the other whom she could not identify.  (*Id*. ¶¶ 2-3.)  She then saw another co-worker using his cell phone as a flashlight as he approached her bed and began reaching for her covers.  (*Id*. ¶ 4.)  When he saw McCrea staring at him he jumped and then retreated.  (*Id*. ¶ 4.)  McCrea reported the incident to Fire Department officials.  (*Id*. ¶ 5.)

McCrea subsequently began experiencing stress, along with other cognitive and physical symptoms, and was placed on medical leave in June.  (*Id*. ¶¶ 11-13, 15.)  She was later diagnosed with acute stress reaction and sought to have her symptoms treated as "performance on duty" ("POD") injuries.  Her request was denied, and she administratively appealed the decision.  (*Id*. ¶¶ 15-18, 20.)

In October, McCrea's physician diagnosed her with Post Traumatic Stress Disorder, and on January 8, 2014, approved her request to return to light duty.  (*See id.* ¶¶ 26-27, 30, 33.)  Although the details are unclear, McCrea claims she subsequently completed all training prerequisites for returning to work but was "administratively barred" from doing so when she

---

[2]  In considering a motion to dismiss for failure to state a claim, the court must "accept the factual allegations in the complaint as true" and grant plaintiff "the benefit of all reasonable inferences derived from the facts alleged."  *Bregman v. Perles*, 747 F.3d 873, 875 (D.C. Cir. 2014).

[3]  The operative complaint is the Second Amended Complaint (hereinafter "SAC").  (*See* ECF No. 68).

sought recertification credentials from the training academy.  (*Id*. ¶ 34.)  McCrea alleges that she was "forced" to attend "monitoring sessions" with PFC psychologist Dr. Raquel Gordon.  (*Id*. ¶ 35.)

In March, McCrea learned that her appeal of the non-POD decision had been denied and she was ordered to report for recertification training.  (*Id*. ¶¶ 37-39, 41.)  It is unclear whether, as she asserts, EMS ultimately approved her recertification training, but she claims that during this time she recovered "deleted" files confirming that she had previously satisfied the training requirements.  (*Id*. ¶¶ 41-42.)

McCrea alleges that around this time, Dr. Gordon issued a psychological report requiring her to undergo a battery of psychological tests.  (*Id*. ¶¶ 43-45.)  When she protested, McCrea was told that the testing was a Fitness for Duty examination.  (*Id*. ¶ 45.)  Still not allowed to return to work, McCrea requested advance sick leave, but it appears her request was denied.  (*See id*. ¶ 44.)  At some point, she received a letter regarding FMLA leave and claims she was told she should "accept" such leave to avoid unspecified disciplinary action.  (*Id*. ¶ 56.)

Under protest, McCrea submitted to a psychological assessment by Dr. Gloria Morote (a Clinical Neuropsychologist at PFC) on March 31, 2014.  (*Id*. ¶¶ 45, 54.)  On May 1, 2014, Dr. Morote, Michael Donlon (Battalion Fire Chief and Medical Services Officer), and William B. Sarvis, Jr. (Police Department Director of Medical Services), submitted a report to the District of Columbia Police and Firefighters' Retirement and Relief Board (the "Board") recommending McCrea's involuntary non-POD disability retirement.  (SAC ¶ 59; SAC, Attachment D.)[4]  The report outlined McCrea's history, explained the results of her psychological tests, indicated that

---

[4] On a motion to dismiss under Rule 12(b)(6), the court may, in addition to the facts alleged in the complaint, also consider "any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice."  *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) (alteration in the original).

she had been on leave in less than full duty status since June 2013 and concluded that she was suffering from "unspecified anxiety disorder" that prevented her from returning to "performance of full duty." (SAC, Attachment D at 4, 7-8.)

Despite the recommendation, McCrea repeatedly sought permission to return to work with "reasonable accommodations" as set forth by her treating physicians, but EMS required her to return to PFC for evaluation before it decided on her request. (SAC ¶¶ 75, 81-3.) McCrea acquiesced and signed a waiver allowing PFC to obtain information from her treating physician. (*Id*. ¶ 81.) She contends that PFC's Dr. Marc Cottrell "breached the stipulated constraints of the authorization" by demanding access to her "private records," as well as her treating physician's diagnosis and treatment protocols. (*Id*. ¶ 83.) When McCrea met with Dr. Cottrell, he explained that her ability to return to work depended on her treating physician answering specific written questions. (*Id*. ¶ 85.) McCrea refused to refer the questions to her physician, claiming that Cottrell's inquiries violated the Americans with Disabilities Act ("ADA") and the Health Insurance Portability and Accountability Act ("HIPAA"). (*Id*.)

In November, McCrea attended her first Board hearing on the proposed involuntary retirement. (SAC ¶ 87.) Over the next few months, the Board held another hearing and informed McCrea that she could not return to work if she did not provide PFC the requested information. (*Id*. ¶¶ 92, 97-98.)

Around this time, Dr. Morote submitted an affidavit to the Board confirming her previous psychological assessment of McCrea and, at the third and final Board hearing on February 12, 2015, testified that her assessment remained unchanged, despite having reviewed evidence from McCrea's treating physician. (SAC ¶¶ 93-94; SAC, Attachment E at 14-15.) At that hearing, McCrea reiterated her belief that further medical inquiries violated her rights and challenged PFC's assessments. (SAC ¶ 99; *see* SAC, Attachment E at 14-15.) On April 30, 2015, the Board

issued a decision ordering McCrea's involuntary retirement due to a non-POD disability.  (SAC

¶ 108.)  It found that McCrea's "paranoia and distrust is so pervasive that" she "could no longer

work effectively with a team," thereby posing "a risk to herself and to the public" because she

could not perform the "full duties of a firefighter."  *McCrea v. D.C. Police & Firefighters' Ret.

& Relief Bd.*, 199 A.3d 208, 211 (D.C.), *cert. denied*, 140 S. Ct. 85 (2019).

In this case McCrea challenges the Board's decisions to deny her accommodations

requests, classify her ailments as non-POD injuries, and force her to retire.  She does not explain

what type of accommodations she requested or how they might have allowed her to perform her

job duties.  She also challenges the legality of actions taken by PFC, the Mayor, EMS

employees, numerous other D.C. employees and the D.C. Council, all of whom she contends

conspired against her.

## 2.  Procedural History

McCrea filed her initial Complaint on April 29, 2016.  (ECF No. 1.)  Shortly thereafter,

the court entered its notice to *pro se* parties advising her that she faced dismissal of her claims if

she failed to comply with the Federal Rules of Civil Procedure, this court's Local Civil Rules

and the court's orders.  (ECF No. 2.)  In September 2016, the court ordered McCrea to amend

her Complaint because it did not comply with Federal Rule of Civil Procedure 8(a).  (ECF No.

10.)  McCrea had named some individuals and their agencies in the Complaint but failed to

indicate whether she asserted claims against the individuals in their individual capacities, their

official capacities, or both.  McCrea also named some individuals and agencies in the caption of

her case but did not include any factual allegations about them in the Complaint.  She also made

allegations against certain individuals in her Complaint but did not name them as defendants in

the caption.  The court listed the relevant Defendants in its Order and identified the specific Rule

8(a) problem associated with each.  After seeking multiple extensions, McCrea filed an

Amended Complaint that was approximately twenty pages longer than the original version, but no more elucidating.  (*See* ECF No. 23).

Several Defendants filed motions to dismiss.  In response, McCrea referenced a different Complaint she had delivered to the Clerk's office, but which had not been docketed, and the court therefore struck her responses because they were based on a Complaint that did not appear in the record and McCrea had not sought leave to amend.  (*See* 1/24/17 Min. Order; 1/25/17 Min. Order.)

At a hearing on April 20, 2017, the court granted McCrea's request to file a SAC.  (ECF No. 61, Tr. 13.)  During the hearing, the court explained to McCrea that her proposed SAC must indicate which claims are asserted against which Defendants and the actions each Defendant took, as well as the capacity in which the Defendants were being sued.  (*Id*. at 4, 7, 16.)  Although McCrea indicated that she had already begun drafting the SAC, the court gave her more than thirty additional days to file the SAC.  (*Id*. at 11, 16.)  One day after the deadline, McCrea filed a motion requesting an extension of several days.  (ECF No. 38.)  Although McCrea did not explain her reasons for needing an extension, the court gave her six additional days beyond those she requested, making her SAC due June 1, 2017.  (*Id*.; May 24, 2017 Min. Order.)

More than eleven days after the deadline, the court dismissed this action because McCrea had not filed the SAC nor sought an extension of the deadline.  (*Id*.)  Rather than file a motion to reconsider, McCrea filed a notice of appeal.  (ECF No. 43.)  Two months later, while the appeal was pending, she filed a Motion for Relief from Judgment, asking the court to reopen her case. (ECF No. 51.)  The court granted the motion but reminded her of the deficiencies it had previously pointed out.  (ECF No. 66.)

McCrea subsequently filed the SAC, but it is not a model of clarity or brevity at fifty-seven pages (thirteen pages longer than the last version), including approximately 170 numbered and lettered paragraphs.  (ECF No. 68.)[5]  Although the SAC contains a "claim for relief" section, roughly twenty-six federal and state claims are scattered throughout the pleading.[6]  Moreover,

---

[5]  The SAC contains four sections, but two of them are numbered "3": one section is labeled as the fact section and one is labeled as the "Cause of Action or Claim for Relief" section.  Each section contains numbered paragraphs and, in some instances, lettered subparagraphs.  To avoid confusion, the court will cite to the first section, containing the factual allegations, as "SAC" followed by the appropriate paragraph (¶) number or page (p.) number.  (*See* SAC pp. 10-46.)  The section "3" containing the causes of action will be referred to as "SAC COA," followed by the appropriate paragraph or page number.  (*See* SAC COA pp. 46-57.)

[6]  McCrea appears to bring the following claims:

1.  42 U.S.C. § 1983 (civil conspiracy).  (SAC COA ¶ 1)

2.  42 U.S.C. § 1985 (conspiracy to interfere with civil rights & the Americans with Disabilities Act).  (SAC COA ¶ 2)

3.  42 U.S.C. § 1983 (constructive discharge & Americans with Disabilities Act).  (SAC COA ¶ 3)

4.  First Amendment (free speech and retaliation).  (SAC COA ¶¶ 3(b) – (c), (e); 7(b)

5.  The Americans with Disabilities Act.  (SAC COA ¶ 4; pp. 52-56)

6.  42 U.S.C. § 1983 (medical malpractice & Americans with Disabilities Act).  (SAC COA ¶ 4)

7.  42 U.S.C. § 1983 (medical negligence-informed consent & Americans with Disabilities Act).  (SAC COA ¶ 5)

8.  42 U.S.C. § 1983 (Fourth Amendment invasion of privacy & Americans with Disabilities Act).  (SAC COA ¶¶ 6)

9.  42 U.S.C. § 1983 (defamation of character).  (SAC COA ¶ 7)

10. Fifth Amendment (violation of property interest). (SAC COA ¶ 7(e))

11. 42 U.S.C. § 1983 (fraudulent misrepresentation & medical malpractice).  (SAC COA ¶ 8.)

despite numerous orders from this court specifically reminding her of the deficiencies in the original Complaint, she largely fails to identify which claims she asserts against which of the approximately twenty-seven Defendants. [7] (*See* SAC COA pp. 46-56.)

---

12. 42 U.S.C. § 1983 (criminal, common law fraud and fraud on the court). (SAC COA ¶9)

13. 42 U.S.C. § 1983 (fraudulent misrepresentation & spoliation or fabrication of evidence).  (SAC COA ¶ 10)

14. 42 U.S.C. § 1983 (fraudulent misrepresentation & forgery).  (SAC COA ¶ 11)

15. 42 U.S.C. § 1983 (fraudulent misrepresentation & utterance of fraud).  (SAC COA ¶ 12)

16. 42 U.S.C. § 1983 (intentional infliction of emotional distress).  (SAC COA ¶ 13)

17. 42 U.S.C. § 1983 (negligent infliction of emotional distress).  (SAC COA ¶ 14)

18. 42 U.S.C. § 1983 (tortious interference).  (SAC COA ¶ 15)

19. 42 U.S.C. § 1983 (Fifth Amendment substantive due process) (SAC COA ¶ 16; pp. 54-55)

20. 42 U.S.C. § 1983 (Fifth Amendment procedural due process) (SAC COA ¶ 17; pp. 54-55)

21. Supremacy Clause (preemption: Americans with Disabilities Act & Rehabilitation Act) (SAC COA pp. 52-55)

22. 42 U.S.C. § 1983 (Fifth Amendment equal protection) (SAC COA ¶ 19)

23. Americans with Disabilities Act/Rehabilitation Act (SAC COA ¶ 20)

24. 42 U.S.C. § 1983 (negligence) (SAC COA ¶ 21)

25. 42 U.S.C. § 1981 (Equal Rights under the law) (SAC COA ¶ 22)

26.  Health Insurance Portability and Accountability Act

[7]  Except in one instance where she associates the D.C. Council with a specific claim, McCrea repeatedly alleges that "Defendants" collectively violated each listed law.  Her failure to identify which claims she asserts against which Defendants is a deficiency that has led several courts to admonish her and/or grant defendants' dispositive motions.  *McCrea v. Wells Fargo*, No. CV

McCrea seeks money damages, an order directing the D.C. City Council to cease enforcing its firefighter retirement regulations, costs and fees associated with bringing this action, as well as costs and fees related to bringing her numerous administrative proceedings and appeals.[8]  (*See* SAC COA pp. 56-57.)  After Defendants filed their motions to dismiss, the court issued orders advising McCrea that her failure to respond to the arguments the Defendants raised in their motions might result in the court treating the arguments as conceded.  (ECF Nos. 73, 74, 77, 80); *see* Local Civil Rule 7(b).

This Memorandum Opinion addresses the motions to dismiss filed by the D.C. Council, PFC defendants and Lois Hochhauser; a separate opinion will address the motions filed by the remaining D.C. defendants.

## B.  STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim tests the legal sufficiency of a complaint.  See *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678,

---

RDB-18-2490, 2019 WL 2513770, at \*5 (D. Md. June 17, 2019) ("Plaintiff's Complaint is a textbook case of impermissible shotgun pleading.  McCrea's Complaint presents 85 paragraphs of factual allegations under the heading 'Statement of Claim,' culminating, without further elaboration, in a list [of] over twenty causes of action."); *McCrea v. Johns Hopkins Universities*, No. JKB-15-0579, 2016 WL 6166999, at \*4 n.4 (D. Md. Oct. 24, 2016) ("The Complaint listed only alleged facts combined with conclusory statements about the presence of discriminatory intent.  In response to the Court's order, Plaintiff provided a "more definite statement," in which she alleged violations of the seven statutes listed above but did not articulate which of Defendants' actions she alleged to violate which statutes.") (citation to the record omitted).

[8]  McCrea unsuccessfully pursued administrative discrimination claims, as well as judicial review of the Board's decision.  (SAC, Attachment F); *McCrea v. D.C. Police & Firefighters' Ret. & Relief Bd.*, 199 A.3d 208, 209 (D.C. 2019).  She also filed internal complaints against several EMS co-workers and supervisors.  (*See* SAC ¶¶ 10, 17, 18, 73, 76, 79.)

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible

when the facts alleged allow the court to "draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Id*.  McCrea's factual allegations need not be "detailed," but

"the Federal Rules demand more than 'an unadorned, the-defendant-unlawfully-harmed-me

accusation.'"  *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 86 (D.D.C. 2016) (citing

*Twombly*, 550 U.S. at 570).

*Pro se* complaints, "however unartfully pleaded, must be held to less stringent standards

than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Nonetheless, a *pro se* plaintiff must still "plead

factual matter that permits the court to infer more than the mere possibility of misconduct."

*Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (quoting *Iqbal*, 556

U.S. at 679).

## C.  ANALYSIS

### 1.  D.C. City Council and the Police and Firefighters' Retirement and Disability Act

McCrea alleges that the D.C. City Council's enactment of D.C. Code Sections §§ 5-633,

5-634, 5-701, 5-709, and 5-710 violated the ADA, the Rehabilitation Act and the U.S.

Constitution's Due Process and Equal Protection clauses.  (SAC COA ¶ 18.)  The challenged

provisions from the Police and Firefighters' Retirement and Disability Act (PFRDA), D.C. Code

§ 5–701 *et seq.*, relate to leave for police and firefighters suffering from POD and non-POD

injuries, as well the circumstances under which the District may force injured officers and

firefighters to retire.  McCrea brings claims directly against the City Council and seeks an

injunction preventing it from "enforcing involuntary retirement of qualified" firefighters, as well

as restoring her sick and annual leave.  (SAC COA pp. 56-57.)

### A. Legislative Immunity

The D.C. City Council argues that it is entitled to legislative immunity under the District's Speech or Debate Statute, which provides that "[f]or any speech or debate made in the course of their legislative duties, the members of the Council shall not be questioned in any other place."  D.C. Code § 1–301.42.

> "Legislative duties" shall include the responsibilities of each member of the Council in the exercise of such member's functions as a legislative representative, including but not limited to: Everything said, written or done during legislative sessions, meetings, or investigations of the Council or any committee of the Council, and everything said, written, or done in the process of drafting and publishing legislation and legislative reports.

D.C. Code § 1-301.41(b).

McCrea concedes that legislative immunity is a complete bar to judicial review and that the Speech or Debate clause should be construed broadly.  (ECF No. 88, Pls. Resp. at 5.)  She argues, however, that because the Council enacted the D.C. Code provisions to assist the Board after it lost a legal challenge to the forced disability retirement of a firefighter, it is not protected by legislative immunity.  (*Id*. at 5-6) (citing *Adgerson v. Police & Firefighters' Ret. & Relief Bd.*, 73 A.3d 985, 992 (D.C. 2013) (discussing revision of the firefighter disability retirement provisions in response to a court ruling vacating and remanding the Board's decision in *Alexander v. D.C. Police & Firefighters' Ret. & Relief Bd.*, 783 A.2d 155, 157 (D.C. 2001)).

But the Council does not lose its legislative immunity because it amends legislation in response to an adverse legal ruling.  The Council amended the mandatory retirement provisions to "increase the number of police officers and firefighters on full duty in the respective departments" after determining that staffing levels were a "major concern for District policy makers" because "not having a fully staffed fire and police department" prevented the District from achieving public safety goals such as "reducing emergency ambulance response time."  Bill

15-32, Council of the District of Columbia Report, at 16 (Dec. 9, 2003).  As such, the new

legislation "reformed the area of medical leave and limited duty to increase the number of police

officers and firefighters on full duty in their respective departments."  *Id*. at 16-17.

Amending a law to improve public safety is a protected legislative function, even where

the impetus for the amendment is an adverse judicial ruling, and McCrea cites no case law

suggesting otherwise.  While she cites cases involving legislators who were not protected by the

Speech or Debate Clause, those cases involved very different facts.  (*See* ECF No. 88, Pls. Resp.

at 4-5.)[9]

McCrea argues that the Council is not entitled to legislative immunity because the

amendments to the D.C. Code provisions were "administrative," rather than legislative, as they

were directed at a particular "employee or employees."  (ECF No. 88, Pls. Resp. at 6-7.)  "A

personnel decision is administrative in nature if it is directed at a particular employee or

employees, and is not part of a broader legislative policy."  *Almonte v. City of Long Beach*, 478

F.3d 100, 108 (2d Cir. 2007) (citing *Bogan v. Scott–Harris,* 523 U.S. 44, 54 (1998)); *see Gross v.

Winter*, 876 F.2d 165, 169-70 (D.C. Cir. 1989) (D.C. Council member who terminated an

employee who complained of discrimination was not protected by legislative immunity).

McCrea's argument fails.  Amendments like the one here—involving police and

firefighter leave and benefits—derive from broad legislative policies such as public safety, that

---

[9]   McCrea incorrectly relies on cases such as *Hutchinson v. Proxmire*, 443 U.S. 111, 122, n.10
(1979) (finding that negative comments made on the floor of Congress about plaintiff's research
were protected by the Speech or Debate clause, but were not protected when made during
subsequent telephone calls to executive agencies for the alleged purpose of influencing the
agencies to cease funding plaintiff's research), and *Gravel v. United States*, 408 U.S. 606, 625
(1972) (finding that Congressman's conduct during a subcommittee hearing was protected by the
Speech or Debate clause, but not his subsequent agreement to disclose confidential documents to
a publisher for public dissemination, because such conduct was not "an integral part of the
deliberative and communicative processes" of Congress).

"reach well beyond the particular occupant of the office." *See Almonte*, 478 F.3d at 108.  In contrast, the cases upon which McCrea relies did not involve enactment of "general policies," but instead involved conduct that illegally targeted particular individuals.  (*See* ECF No. 88, Pls. Resp. at 6-8)[10]

McCrea's third argument—that legislative immunity does not protect the City Council from conduct that violates Title VII or the Age Discrimination in Employment Act, (*see* ECF No. 88, Pls. Resp. at 6-8), is misplaced because she was not employed by the Council.

Because McCrea has failed to assert facts that would overcome the Council's immunity defense, the court will grant the Council's motion to dismiss with prejudice and treat McCrea's preemption claim as asserted against the District of Columbia.

### B.  Preemption

McCrea also argues that the challenged PFRDA provisions violate the ADA, 42 U.S.C. § 12112, *et seq.*, as well as the Rehabilitation Act, 29 U.S.C. § 791 *et seq.*, and are therefore preempted.  (*See* ECF No. 88, Pls. Resp. at 8.)  This argument is without merit.

As an initial matter, McCrea's preemption claim does not satisfy Federal Rule of Civil Procedure 8's requirements.  While the court recognizes that complaints filed by *pro se* litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), even *pro se* litigants must comply with the Federal Rules of Civil Procedure.  *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987).  Federal Rule

---

[10]   McCrea incorrectly relies on cases such as *Acevedo-Garcia v. Vera-Monroig*, 204 F.3d 1, 9 (1st Cir. 2000) (affirming denial of summary judgment for municipality on absolute immunity grounds where enactment of city ordinances reflected discretionary policy decisions, but the implementation of the ordinances through layoffs of political opponents reflected administrative functions), and *Canary v. Osborn*, 211 F.3d 324, 324 (6th Cir. 2000) (affirming denial of summary judgment for municipality where it adopted a resolution terminating employee whistleblowers).

of Civil Procedure 8(a) requires that complaints contain "a short and plain statement of the claim

showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), so that the defendant receives

"fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 555–56 (2007) (citation and alterations omitted).

McCrea has not met this standard.  She does not point to any provision in the ADA or the

Rehabilitation Act which purportedly preempts the challenged D.C. Code provisions, and

therefore the District cannot discern the grounds upon which McCrea's claim rests.  *See Williams

v. Brennan*, 285 F. Supp. 3d 1, 5 (D.D.C. 2017) ("Where a complaint is insufficiently focused, it

places an undue burden on the defendant to answer or move, and it invites unnecessary delay and

confusion in the proceedings.") (citation and alteration omitted).[11]

McCrea's preemption claim also fails substantively.  "A fundamental principle of the

Constitution is that Congress has the power to preempt state law." *Crosby v. Nat'l Foreign

Trade Council*, 530 U.S. 363, 372 (2000) (citations omitted).  "[T]he ADA does not contain an

express preemption provision." *Rubietta v. National R.R. Passenger Corp.,* No. 08 Civ. 7117,

2012 WL 345909, at *4 (N.D. Ill. Jan. 30, 2012).  In the absence of an express preemption

provision, the Supreme Court has found that

> state law must yield to a congressional Act in at least two circumstances.  When
> Congress intends federal law to "occupy the field," state law in that area is
> preempted.  And even if Congress has not occupied the field, state law is naturally
> preempted to the extent of any conflict with a federal statute.

*Crosby*, 530 U.S. at 372 (2000) (citations omitted).  In other words, preemption occurs

"where it is impossible for a . . . party to comply with both state and federal law." *Id*. at

372-3 (citation omitted).

---

[11]   Likewise, McCrea does not proffer any facts or direct the court to any provision of the ADA
or Rehabilitation Act supporting her allegation that these statutes violate the due process or equal
protection clauses.

Applying these principles, the court rejects McCrea's argument that the challenged PFRDA provisions are preempted.  The ADA prohibits employers from discriminating "against a qualified individual with a disability because of that disability."  42 U.S.C. § 12112(b)(5)(A). "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. . . ."  42 U.S.C. § 12111(8).[12]

The PFRDA provisions at issue do not conflict with the ADA, nor do they create "an obstacle to the accomplishment and execution of the full purposes and objectives," *see Crosby*, 530 U.S. at 372, of the statute.  Pursuant to D.C. Code § 5-634, firefighters like McCrea, who have non-POD injuries, "shall" be recommended for retirement if, after "consultation with the Police and Fire Clinic physicians," the EMS determines that the firefighter will "not be able to perform the full range of duties after achieving maximum medical improvement."  D.C. Code § 5-634(b).  Even where it is expected that the firefighter "will be able to perform the full range of duties after achieving maximum medical improvement," the EMS "shall process" the firefighter for retirement if the employee spends "64 cumulative work days in a less-than-full-duty status over any 2-year period as a result of any one non-performance-of-duty injury or illness, including any complications relating to the injury or illness."  D.C. Code § 5-634(d).  The Code defines "full range of duties" as

> the ability of a member to perform all of the essential functions of police work or fire suppression as determined by the established policies and procedures of the Metropolitan Police Department or the Fire and Emergency Medical Services Department, and to meet the [relevant] physical examination and physical agility standards . . . .

---

[12]  "The standards used to determine whether [the Rehabilitation Act] has been violated in a complaint alleging employment discrimination . . .  shall be the standards applied under [certain provisions of] the Americans with Disabilities Act."  *Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C. Cir. 2002) (quoting 29 U.S.C. § 794(d)).

D.C. Code § 5-631.

The retirement provisions at issue do not prevent firefighters from seeking reasonable accommodations under the ADA in order to perform the essential functions of their jobs.  The provisions simply require the District to remove injured police officers and firefighters—like McCrea—from the employment rolls if they cannot perform their full range of duties (even with accommodations) and are on leave for more than two consecutive months.  Accordingly, the challenged PFRDA provisions do not conflict with the ADA or Rehabilitation Act and are not preempted.[13]

## 2.  PFC Associates Defendants

### A.  Individual PFC Defendants

Defendants Dr. Olusola Malomo, Dr. Raquel Gordon, and Dr. Marc Cottrell are employees of defendant Police and Fire Clinic Associates, LLC (PFC), a private contractor that evaluated McCrea and concluded that her condition prevented her from returning to full duty. (*See* ECF 71, PFC Mot. to Dismiss).  In her SAC, McCrea asserts a litany of allegations regarding these Defendants, but identifies few, if any, legal theories to support her claims.  The court agrees with these individual defendants that McCrea has failed to satisfy the notice pleading requirements of Rule 8.

---

[13] The other PFRDA provision McCrea challenges, § 5-709 (setting forth the formula for calculating non-POD retirement benefits), is likewise not preempted.  She also challenges D.C. Code Sections 5-633 and 5-710, which relate to involuntary retirement of police and firefighters due to POD related injuries.  These two provisions are inapplicable because EMS determined that McCrea's illness was non-POD.

As discussed in this court's opinion addressing McCrea's claims against the District of Columbia, her ADA and Rehabilitation Act reasonable accommodations claims survive the District's motion to dismiss.

Moreover, in response to Defendants' Rule 8 argument, McCrea asserts, without explanation, that "there is factual content detailing the actions and/or lack of actions of Defendants" in her June 13, 2017 Motion for Relief from Judgement and the SAC.  (ECF No. 90, Pls. Resp. at 6) (*citing* ECF No. 51.)  She then directs the court to the exhibits, totaling 103 pages, attached to her opposition to the motion to dismiss, but provides no pinpoint citations. (ECF No. 90, Pls. Resp. at 6.) [14]

McCrea's response is inadequate.  Her SAC is long, repetitive, rambling, and does not indicate which factual allegations support which claims.  It fails to meet the standard of Federal Rule of Civil Procedure 8, which is intended to ensure that defendants receive fair notice of the claims against them.  *See O'Diah v. Cordray*, No. CV 17-966 (UNA), 2017 WL 2735549, at *1 (D.D.C. June 23, 2017), *aff'd*, 707 F. Appx 5 (D.C. Cir. 2017) (citation omitted).

Given McCrea's *pro se* status, however, the court reviewed her Motion for Relief from Judgment, [15] SAC, and her response to PFC's motion in an effort to determine the viability of any claims against the PFC defendants.  These pleadings do not indicate what cause of action might possibly apply to Dr. Malomo. [16]

---

[14]  McCrea repeatedly provided the same response to PFC's arguments: "There is factual content detailing the actions and/or lack of actions of Defendants in" her June 13, 2017 Motion for Relief from Judgement and the SAC.  (*See e.g.*, ECF No. 90, Pls. Resp. at 7, 9, 12, 14, 28.)

[15]  McCrea's Motion for Relief from Judgment, a twenty-nine-page brief containing disjointed and sometimes irrelevant arguments, to which she attached 191 pages of exhibits, provides no insight into or support for her arguments.

[16] McCrea asserts the following: 1) She sought permission from Dr. Malomo to return to work; 2) Dr. Malomo diagnosed her with PTSD; 3) Dr. Malomo authorized McCrea to attend rehabilitation counseling outside of EMS, which she did on at least one occasion; 4) Dr. Malomo received the final PFC report which concluded that McCrea could not return to full duty; 5) McCrea, Dr. Malomo, and others met to discuss McCrea's "repeated requests" for accommodations, but Dr. Malomo would not consider the request until McCrea's treating physician answered Dr. Cottrell's questions about her condition.  (SAC ¶¶ 30, 32, 57, 59, 61, 91.)

McCrea's allegations against Dr. Gordon boil down to two potential claims.  First, that Dr. Gordon engaged in unspecified "wanton" breaches of McCrea's privacy that McCrea "discovered" in the treatment notes.  (*See* SAC ¶ 82.)  While McCrea alleges that she saw Dr. Gordon on numerous occasions, absent any information regarding what information was allegedly disclosed, to whom and when, Dr. Gordon cannot prepare a response or assert appropriate defenses to what appears to be an invasion of privacy claim, which also, as discussed below, is time barred.

McCrea also contends that Dr. Gordon "fabricated" a report in which Gordon expressed unsubstantiated concerns, as well as made fraudulent misrepresentations about McCrea's progress.  (SAC ¶ 43.)  This allegation is likewise not actionable without information regarding the nature of the purported misrepresentations; as discussed below, fraud claims must be pled with particularity.  *See* Fed. R. Civ. P. 9(b).  Moreover, there is no evidence McCrea relied on any alleged misrepresentations, and this claim is also time barred.[17]

Finally, without providing any supporting facts, McCrea claims that Dr. Cottrell submitted unsubstantiated "concerns of safety and prejudicial inferences about Plaintiff" to the

---

[17]   McCrea also asserts the following with respect to Dr. Gordon: 1) She sought permission from Dr. Gordon to return to work; 2) She reported to Dr. Gordon for "forced monitoring"; 3) Dr. Gordon recorded McCrea's progress towards full duty status; 4) McCrea complained about Dr. Gordon's "lack of integrity, lack of professionalism, and lack of ethics"; 5)  McCrea submitted a complaint to EMS regarding her continuing "forced monitoring" with Dr. Gordon; 6) after Dr. Gordon "verbal[ly] rebuff[ed]" her, McCrea submitted reports from her treating physicians with recommendations for workplace accommodations; 7) McCrea met with Drs. Gordon and Cottrell about Dr. Gordon's refusal to accept her return to work certification; and 8) McCrea's forced monitoring with Dr. Gordon was eventually terminated.  (SAC ¶¶ 30, 35, 40, 43, 74, 75, 80, 82.)

Board.[18]  (SAC ¶ 95.)  As discussed below, even if McCrea has alleged sufficient facts to support a defamation claim, the claim would be time barred.

McCrea also claims that Dr. Cottrell violated the ADA and HIPAA, *see* 42 U.S.C. § 1320d-6, by seeking additional information from her treating physicians.  As discussed below, the ADA and Rehabilitation Act claims are not actionable because neither PFC nor Dr. Cottrell were McCrea's employers.  McCrea's HIPAA claims are not actionable because, *inter alia*, there is no private cause of action for HIPAA violations.

For these reasons, the court will dismiss the claims asserted against Drs. Malomo, Gordon, and Cottrell with prejudice.

### B.  PFC

With regard to the claims against PFC generally, the court agrees that McCrea's SAC does not satisfy Rule 8(a)'s requirements because it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and the few facts that she does plead are insufficient to state a claim.

---

[18] McCrea claims that: 1) after she submitted her second request for accommodations, Dr. Cottrell insisted that he needed to confer with McCrea's treating physicians, and McCrea signed a form authorizing him to do so; 2) Dr. Cottrell requested information that exceeded the authorization; 3) McCrea told Dr. Cottrell that she wanted a written "informed consent" document outlining their relationship and her rights with respect to the forced monitoring; 4) Dr. Cottrell told McCrea that he would not provide such a document and was unable to direct her to anyone at PFC with whom she could discuss the matter; 5) Dr. Cottrell attempted to give McCrea a list of questions her treating physician needed to answer before McCrea could return to work, but she refused the list; 6)  McCrea told Dr. Cottrell that his request for additional information violated the ADA and HIPAA; 7) Dr. Cottrell ignored McCrea's third request for accommodations; 8) the Board told McCrea that her physicians must answer Dr. Cottrell's questions in order for her to be considered for return to work; and 9) the Board's decision relied on Dr. Cottrell's report.  (SAC ¶¶ 81- 85, 91, 93, 95, 97-98, 108.)

1. <u>ADA Reasonable Accommodations</u>

While McCrea does not specify the ADA Title under which she seeks relief, the substance of her allegations indicates that her claim is under Title I because she challenges EMS' mandatory "unwarranted psychological assessments," its failure to provide her with requested accommodations, and its insistence on obtaining additional information from her treating physicians.  (*See, e.g.* SAC pp. 47-48, 55-56.)

PFC argues that because McCrea was not employed by PFC, she cannot sue it under Title I, which applies solely to a "covered entity," defined as "an employer, employment agency, labor organization, or joint labor management committee."  *Baron v. Dulinski*, 928 F. Supp. 2d 38, 41 (D.D.C. 2013) (citing 42 U.S.C. § 12111(2)).  McCrea did not respond to PFC's argument on this issue, and therefore, to the extent she asserts ADA Title I claims against PFC, the court will treat those claims as conceded and will grant PFC's motion to dismiss with prejudice.  *See* Local Civil Rule 7(b); *Stephenson v. Cox*, 223 F. Supp. 2d 119, 121 (D.D.C. 2002) (citing *Sparrow v. United Air Lines, Inc.,* 1999 U.S. Dist. LEXIS 22054, at *17 (D.D.C. July 23, 1999), *overruled on other grounds,* 216 F.3d 1111 (D.C. Cir. 2000) (treating as conceded arguments the non-movant failed to address in response to a motion to dismiss).[19]

---

[19]  Although the Rehabilitation Act applies to employer-employee relationships, its reach is broader than the ADA.  *Fleming v. Yuma Reg'l Med. Ctr.*, 587 F.3d 938, 941-42 (9th Cir. 2009). The Rehabilitation Act "specifically defines the entities to which it applies, and does not address employers."  *Id.* (*citing* 29 U.S.C. §§ 705(20), 794(a), (b)).  For employee claims, the Act provides that "[t]he standards used to determine whether this section has been violated . . . shall be the standards applied under title I of the Americans with Disabilities Act . . . as such sections relate to employment."  29 U.S.C. § 794(d); *Fleming*, 587 F.3d at 940-41 (citing 941 42 U.S.C. §§ 12111–17, 12201–04, 12210).  Accordingly, McCrea's Rehabilitation Act claim fails for the same reason as her ADA claim.

2.  <u>HIPAA</u>[20]

With respect to her HIPAA claim, McCrea admits that she signed a waiver allowing her physicians to disclose medical information to PFC but claims that Dr. Cottrell sought information beyond the limits of the waiver.  (SAC ¶¶ 81-83.)  This allegation does not state a cognizable HIPPA claim.  HIPPA "generally provides for confidentiality of medical records." *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) (citing 42 U.S.C. §§ 1320d–1 to d-7), and McCrea points to no provision of HIPAA that precludes requests for medical information. Moreover, HIPAA does not create a private right of action.  *Acara*, 470 F.3d at 571; *Hudes v. Aetna Life Ins. Co.*, 806 F. Supp. 2d 180, 196 (D.D.C.2011), *aff'd,* 493 Fed. Appx. 107 (D.C. Cir. 2012).  Accordingly, the court will dismiss this claim with prejudice.

3.  <u>Section 1981</u>

42 U.S.C. § 1981 "prohibits racial discrimination in the 'making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'"  *Carney v. Am. Univ.*, 151 F.3d 1090, 1092–93 (D.C. Cir. 1998) (citing 42 U.S.C. § 1981(b)).  PFC seeks dismissal of McCrea's § 1981 claim because she does not assert claims based on race.  McCrea responds that she has "alleged several overt actions taken by the defendants collectively with the [EMS] officials and the [Board] . . . to force Plaintiff in Involuntary Non-POD Disability because of her membership in a protected class African American."  (ECF No. 90, Pls. Resp. at 10.)

---

[20]  PFC did not address this claim; perhaps because although McCrea mentioned HIPAA in her SAC, she did not list it in the cause of action section.  The court exercises its discretion to dismiss the claim *sua sponte*.  *See Neitzke v. Williams*, 490 U.S. 319, 328-39 (1989) (discussing the district court's authority to dismiss claims *sua sponte* where the "factual contentions are clearly baseless").

McCrea's argument is unpersuasive.  In her SAC, she mentions race twice, both times in relation to actions by the D.C. Defendants.  (SAC ¶ 7) (alleging a "race and sex debate about the assault of a black female entertainer and the racially charged argument with Firefighter Michael Harrison prior to her assault."); (SAC ¶ 119; *see* ECF No. 90, Pls Resp. at 10; *see* SAC, Attachment L-1, pp. 2, 6-7) (alleging that "similarly situated" White firefighters were treated more favorably with respect to leave and/or retirement).  McCrea's challenges to her forced monitoring, forced retirement and any alleged disparate treatment relate to EMS, not PFC.

PFC also argues that it has no contractual relationship with McCrea and therefore her § 1981 claim is not actionable.  McCrea did not respond to this argument and there are no factual allegations suggesting that she entered into a contract with PFC, which simply evaluated her at EMS' request and recommended mandatory retirement.  Accordingly, the court will grant PFC's motion to dismiss the §1981 claim with prejudice.

    4.  <u>State Law Claims</u>

    *a.  Defamation*

McCrea contends that Defendants "published" to the Board unsupported psychological assessments and characterizations that defamed and harmed her professionally and in her community.  (SAC COA ¶ 7; *see also,* SAC ¶¶ 43, 59, 94-95.)  The statute of limitations for defamation claims in the District of Columbia is one year.  *Coulibaly v. Kerry*, 213 F. Supp. 3d 93, 130 (D.D.C. 2016) (citing D.C. Code § 12–301(4)); *Mullin v. Wash. Free Weekly, Inc.*, 785 A.2d 296, 298 (D.C. 2001)).  PFC argues that McCrea's claim is time barred because she contends that PFC submitted its last written evaluations of her to the Board in January 2015, *see* SAC ¶¶ 93-95, but she did not file this lawsuit until more than a year later, on April 29, 2016.

McCrea responds that her claim is saved by the continuous tort doctrine, arguing that the limitations period began to run when the "alleged defamatory acts ended" on April 30, 2015 with the Board's retirement decision, "in concert" with PFC.  (ECF No 90, Pls. Resp. at 22-23.)[21] Under District of Columbia law, "once the plaintiff has been placed on notice of an injury and of the role of the defendants' wrongful conduct in causing it, the policy disfavoring stale claims makes application of the 'continuous tort' doctrine inappropriate."  *Judd v. Resolution Tr. Corp.*, No. CIV.A.95-1074CKK/JMF, 1999 WL 1014964, at *6–7 (D.D.C. Aug. 17, 1999) (citing *Wallace v. Skadden, Arps, Slate, Meagher & Flom,* 715 A.2d 873 (D.C. 1998)).  Before it issued its decision in April 2015, the Board held its second hearing in January 2015, during which Dr. Morote reaffirmed her previous psychological assessments.  The Board held its final hearing on February 12, 2015, during which Dr. Morote testified that her assessments remained unchanged, despite having reviewed evidence from McCrea's treating physicians.  (*See* SAC ¶¶ 93-94, 108-9; SAC, Attachment E 14-15.)  Thus, PFC's role in the retirement decision process ended at the February 2015 hearing, in which McCrea participated, not in April when the Board made its final decision.  Yet McCrea waited until April 2016, more than one year after the last hearing, to file this lawsuit.  Accordingly, she cannot rely on the continuing tort doctrine and her defamation claim is untimely.  (SAC, Attachment E 14-15.)

PFC also argues that McCrea's claim should be dismissed because PFC's psychological assessments constitute opinions.  To assert a defamation claim McCrea must allege, *inter alia*, "that the defendant made a false and defamatory statement concerning" her.  *Armstrong v. Thompson*, 80 A.3d 177, 183 (D.C. 2013).  "[W]hile statements of fact 'may be the basis for a

---

[21]   McCrea asserts that the Board issued its decision on April 30, <u>2016</u>, but the record and her SAC show that the Board's decision was made on April 30, <u>2015</u>.  (*See* SAC ¶ 109; *see* SAC, Exhibit E, 4/30/15 Board Decision.)

defamation claim, a statement of pure opinion cannot.'"  *Armstrong*, 80 A.3d at 184 (quoting

*Rosen v. American Israel Pub. Affairs Comm., Inc.,* 41 A.3d 1250, 1256 (D.C. 2012)) (some

citations omitted).

McCrea responds that the reports did not contain opinions, but instead contained "actual

facts" that were inaccurate and, therefore actionable.  "A statement of opinion is actionable if—

but only if—'it has an explicit or implicit factual foundation and is therefore objectively

verifiable.'"  *Armstrong*, 80 A.3d at 184 (citation omitted).  Psychological tests and evaluations

are, by their very nature, subjective, and McCrea provides no evidence to the contrary, nor does

she identify the allegedly defamatory or objectively verifiable material.  Moreover, McCrea

conceded in her SAC that the assessments contained "grossly skewed, subjective" and "highly

subjective" "opinions" about her and her test results.  (SAC ¶¶ 59, 94-95.)  The court will

therefore grant PFC's motion to dismiss McCrea's defamation claim with prejudice.

### b.  *Fraudulent Misrepresentation*

McCrea also claims that PFC made fraudulent misrepresentations in their assessments.

(COA ¶¶ 8- 12; *see* SAC ¶¶ 43, 59, 94-95.)  To state a claim for fraud in the District of

Columbia, McCrea must allege "(1) a false representation, (2) in reference to a material fact, (3)

made with knowledge of its falsity, (4) and with intent to deceive, (5) with action taken in

reliance upon the representation."  *United States ex rel. Yelverton v. Fed. Ins. Co.*, 831 F.3d 585,

591 (D.C. Cir. 2016) (citation omitted); *see also Friends Christian High Sch. v. Geneva Fin.

Consultants*, 39 F. Supp. 3d 58, 64 (D.D.C. 2014) (quoting *Atraqchi v. GUMC Unified Billing

Servs.*, 788 A.2d 559, 563 (D.C. 2002)).  McCrea has not asserted facts indicating that she relied

on PFC's alleged misrepresentations.  Indeed, in her SAC, she repeatedly challenged PFC's

findings, assessments and recommendations.

McCrea also fails to assert facts that meet the Rule 9 pleading standard.  Federal Rule of Civil Procedure 9(b) requires the complaint to "state the time, place and content of the false misrepresentations, the fact misrepresented and what was obtained or given up as a consequence of the fraud." *Rodriguez v. Lab. Corp. of Am. Holdings*, 13 F. Supp. 3d 121, 128–29 (D.D.C. 2014) (quoting *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981)). With little to no explanation or citations to the record, she asserts in conclusory fashion that the SAC "recounts with specificity Defendants increased the intensity in monitoring the Plaintiff from 2013 into 2014, then by elevating the matter to an enforcement proceeding, that resulted in the involuntary retirement."  (ECF No. 90, Pls. Resp 25-26.)  This is insufficient to meet the pleading standard.

Moreover, McCrea's claim is time barred.  Although "the D.C. Code does not explicitly provide a statutory period for fraud claims, those claims are usually subject to a three-year limitations" period.  *Dawn J. Bennett Holding, LLC v. FedEx TechConnect, Inc.*, 217 F. Supp. 3d 79, 83 (D.D.C. 2016), *aff'd*, No. 16-7144, 2017 WL 2373115 (D.C. Cir. Apr. 4, 2017) (*citing* § 12–301(8) (providing a three year limitation in circumstances where "a limitation is not otherwise specifically prescribed."); *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (applying §12–301(8) to fraud claims)).  "But the District does not resort to this [three-year] default provision every time a plaintiff uses a label that does not precisely match a specific statute of limitations.  If a stated cause of action is 'intertwined' with one for which a limitations period is prescribed, District courts apply the specifically stated period, not the three-year catch-all."  *Mittleman v. United States*, 104 F.3d 410, 415 (D.C. Cir. 1997) (citing *Saunders v. Nemati,* 580 A.2d 660, 661–62 (D.C. App. 1990); *Hunter v. District of Columbia,* 943 F.2d 69, 71–72 (D.C. Cir. 1991)).

McCrea's allegations regarding PFC's alleged misrepresentations also form the basis for her defamation claims, and therefore the two are "intertwined." (*See* COA ¶¶ 7- 12; *see* SAC ¶¶ 43, 59, 94-95.) Consequently, the one-year limitations period for defamation claims also applies to bar her fraudulent misrepresentation claim. *See Mittleman*, 104 F.3d 410 at 413, 415 (applying defamation one-year limitations period to false light invasion of privacy claims where the facts of the two claims were intertwined). The court will dismiss this claim with prejudice.

### c. *Medical Malpractice*

McCrea claims that PFC's "fraudulent misrepresentations . . . constituted medical malpractice." (SAC COA ¶¶ 4-6, 8.) PFC moves to dismiss this claim because McCrea failed to comply with the District's notice requirement, which states: "Any person who intends to file an action in the court alleging medical malpractice against a healthcare provider shall notify the intended defendant of his or her action not less than 90 days prior to filing the action." D.C. Code § 16–2802(a). "A legal action alleging medical malpractice shall not be commenced in the court unless the requirements of this section have been satisfied." *Diffenderfer v. United States*, 656 F. Supp. 2d 137, 139 (D.D.C. 2009) (citing D.C. Code § 16–2802(c)) (emphasis omitted).

McCrea did not address PFC's argument and her SAC does not indicate that she complied with the notice requirement. Accordingly, the Court will grant PFC's motion to dismiss this claim with prejudice as conceded.

### d. *Invasion of Privacy*

McCrea has asserted no facts supporting her invasion of privacy claim. She alleges that PFC's "unwarranted psychological assessments without cause," Dr. Cottrell's request to obtain medical information from her treating physicians, and Dr. Gordon's unspecified "wanton" conduct amounted to invasions of privacy. (SAC COA ¶ 6; SAC ¶¶ 82, 84-85, 91.)

McCrea did not respond to PFC's timeliness argument.  In the District of Columbia, invasion of privacy claims are subject to a one-year statute of limitations.  *Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1061-62 (D.C. 2014) (citations omitted).  In March 2014, Dr. Gordon completed a report on McCrea, after which Dr. Morote completed McCrea's psychological assessment; in May, Dr. Morote was one of the signatories to the mandatory retirement recommendation.  (SAC ¶¶ 43, 46, 54, 59.)  McCrea challenged this recommendation and sought to return to work, after which Dr. Cottrell requested additional medical documentation.  McCrea met with him, as well as EMS officials about the request in November.  (*Id.* ¶¶ 82-85, 91.)  Thus, PFC's lasts attempts to obtain information from McCrea's medical practitioners occurred in March and November 2014.  McCrea filed this lawsuit in April 2016 and therefore her invasion of privacy claims are untimely and will be dismissed with prejudice.

### e.   Intentional & Negligent Infliction of Emotional Distress

McCrea contends that unspecified Defendants' "continuous and pervasive pattern of administrative interference and or abuse" constituted both negligent and intentional infliction of emotional distress.  (SAC COA ¶¶ 13-14.)  In response to PFC's argument that her claims are untimely, McCrea again raises her continuous tort argument.  Both her emotional distress claims fail because they are intertwined with her defamation claim and are therefore barred by the one-year statute of limitations.  *Nyambal*, 153 F. Supp. 3d at 314–15 (applying one-year limitations period to intentional infliction of emotional distress claims).

Even if her claims were timely, McCrea has not asserted facts to support them.  To state a claim for intentional infliction of emotional distress, McCrea must allege facts establishing: "(1) extreme and outrageous conduct on the part of defendant[s] which (2) either intentionally or recklessly (3) cause[ed] the plaintiff severe emotional distress."  *Howard Univ. v. Best,* 484 A.2d 958, 985 (D.C.1984).  She must also plead facts showing that the challenged conduct was "'so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Larijani v. Georgetown Univ.,* 791 A.2d 41, 44 (D.C. 2002) (quoting *Homan v. Goyal,* 711 A.2d 812, 818 (D.C. 1998)).

McCrea has failed to do so.  She alleges only that PFC required additional medical information, engaged in other unspecified conduct showing a lack of integrity and ethics, reached "unsubstantiated" medical conclusions about her, and gave opinions about her treatment and prognosis to the Board.  These factual allegations do not rise to the level of outrageous conduct.

Likewise, McCrea has not alleged facts supporting a negligent infliction of emotional distress claim, which requires her to establish "(1) that [she] suffered either a physical impact or was within the zone of danger of the defendant's actions, (2) that [she] suffered emotional distress that was serious and verifiable, and (3) that the defendant acted negligently." *David v. D.C.*, 436 F. Supp. 2d 83, 89 (D.D.C. 2006) (citing *Jones v. Howard Univ., Inc.,* 589 A.2d 419, 424 (D.C.1991)) (some citations omitted).  D.C. courts have required that "plaintiff's presence in the zone of danger be contemporaneous with her fear for her own safety." *Jane W. v. President & Directors of Georgetown Coll.*, 863 A.2d 821, 826–27 (D.C. 2004) (citing *Jones*, 589 A.2d at 423).  McCrea proffers no facts suggesting that PFC acted negligently, or that she suffered physical harm, or was in a zone of danger, and therefore her negligent infliction of emotional distress claim will be dismissed with prejudice.

> f.   Forgery

McCrea brings forgery claims against unspecified Defendants under D.C. Code §§ 22-3241.  (*See* ECF. No. 90, Pls. Resp. at 26; SAC COA ¶ 11).  "Forgery is a criminal offense which may, in some instances, include commission of other civil torts (*e.g.*, conversion or fraud),

but it is not in and of itself a civil cause of action." *Nwaoha v. Onyeoziri*, Civil Action No. 04-1779 (GK), 2006 WL 3361540, at *4 (D.D.C. Nov. 20, 2006)).  Although the parties did not address the forgery claim, to the extent McCrea asserts a forgery claim, the court will dismiss it with prejudice.

### g.  *Tortious Interference*

McCrea claims PFC committed tortious interference by virtue of its "continued and pervasive pattern of administrative interference" (presumably the assessments).  (SAC ¶ 15.) This claim is also time barred because it is founded on the same factual allegations as McCrea's time-barred defamation claim.  *See Browning v. Clinton*, 292 F.3d 235, 244 (D.C. Cir. 2002) (applying the defamation one-year statute of limitations after finding that "tortious interference with business expectancy claims have no prescribed statute of limitations" and they were intertwined with the defamation claim).  The court will therefore dismiss this claim with prejudice. [22]

---

[22]  The court will also dismiss the following state law claims, which the parties did not address in their briefs:

- Constructive Discharge (SAC COA ¶ 3):  This claim is not actionable because PFC was not McCrea's employer.  Moreover, "claims of constructive discharge are not stand-alone causes of action.  Rather, a constructive discharge claim is a component of a discrimination case or is relevant to the scope of potential recovery on discrimination or retaliation claims." *Owens-Hart v. Howard Univ.*, 220 F. Supp. 3d 81, 97 (D.D.C. 2016) (*citing Hammel*, 79 F. Supp. 3d 234, 245 (D.D.C. 2015); *Russ v. Van Scoyoc Assocs., Inc.*, 122 F. Supp. 2d 29, 35–36 (D.D.C. 2000) (internal quotation marks omitted).

- Fraud on the Court (SAC COA ¶ 9):  Fraud on the court is inapplicable here because such claims are "directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury.  Fraud upon the court refers only to very unusual cases involving far more than an injury to a single litigant.  Examples include the bribery of a judge or the knowing participation of an attorney in the presentation of perjured testimony." *See Davis v. U.S. Dep't of Health & Human Servs.*, 968 F. Supp. 2d 176, 184 (D.D.C. 2013), *aff'd*, 2014 WL 2178705 (D.C. Cir. Apr. 25, 2014) (citation omitted).

5. Section 1983 Claim

McCrea's 42 U.S.C. § 1983 claim against PFC fails for two reasons.[23]  First, she has not alleged any facts suggesting that PFC's alleged misconduct was the product of an unlawful "policy or custom," as required by *Monell v. Department of Social Services*, 436 U.S. 658, 690–91 (1978); *see Slovinec v. Georgetown Univ.*, 268 F. Supp. 3d 55, 59 (D.D.C. 2017), *aff'd*, No. 17-7122, 2018 WL 1052650 (D.C. Cir. Jan. 26, 2018) (noting that "various circuits have applied § 1983 and its limitations as set forth in *Monell* to private institutions").

Second, even if McCrea could establish that PFC engaged in misconduct under *Monell*, her §1983 claim fails because her underlying federal claims fail.  "Section 1983 creates a cause of action to remedy certain deprivations of federal rights, but it is not a source of substantive rights."  *Pitt v. D.C.*, 491 F.3d 494, 510 (D.C. Cir. 2007).  Instead, a claim under §1983 is "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 145 (1979)).

---

- Spoliation of evidence (SAC COA ¶ 10): This claim is not viable because McCrea alleges spoliation by Defendants, rather than a third party.  *See Cook v. Children's Nat. Med. Ctr.*, 810 F. Supp. 2d 151, 157 (D.D.C. 2011) ("[N]egligent or reckless spoliation of evidence is a claim that can be brought *only* against a third party.") (citing *Holmes v. Amerex Rent-A-Car*, 710 A.2d 846, 84-49 (D.C. 1998)).

- Negligence (SAC COA ¶ 21): A claim of negligence requires "(1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach."  *Poola v. Howard Univ.*, 147 A.3d 267, 289 (D.C. 2016).  The SAC does not contain any facts to support this claim.  To the extent McCrea contends PFC was negligent in its provision of services, her claim lies in medical malpractice and, as discussed above, that claim is foreclosed.

- Fabrication of evidence (SAC COA ¶ 10):  The court is unable to discern the factual or legal authority for this claim.

[23]  The court declines to reach the question of whether McCrea's claim that PFC was a state actor is sufficient to survive a motion to dismiss.  *See Coe v. Holder*, No. 13-CV-184 RLW, 2013 WL 3070893, at *2 (D.D.C. June 18, 2013) ("Under certain circumstances, a private party who jointly participates with a government official can act under color of state law.")

As noted earlier, McCrea has not alleged facts to establish a claim under the ADA or Rehabilitation Act.  Thus, her only remaining avenue for §1983 relief would be to allege facts supporting a constitutional violation.  As discussed below, she has failed to do so and the court will dismiss these claims with prejudice.

a.  *First Amendment*

McCrea alleges that unspecified Defendants violated her "First Amendment Right to freedom of speech, in retaliation for her opposition to further intrusion into her privacy and assertion of her rights under the ADA."  (SAC COA ¶ 3(c).)  She claims she was retaliated against when the Board refused to allow her to return to full duty unless her treating psychologist answered Dr. Cottrell's questions about her diagnosis and treatment.  (*Id*.)  But, as she admits, the questions PFC posed were on behalf of EMS, and therefore McCrea has no legal basis to pursue a First Amendment claim against PFC.  (*See* SAC ¶¶ 97-98.)

Citing her rights under the ADA and HIPAA, McCrea further alleges that unnamed Defendants retaliated against her by defaming her after she refused to allow her treating physicians to provide the requested information.  (SAC COA ¶ 7(b); SAC ¶¶ 85, 91.)  As discussed above, McCrea's defamation claim against PFC is not legally cognizable, and therefore her First Amendment retaliation claim also fails.

b.  *Fourth Amendment*

McCrea claims that Defendants violated her Fourth Amendment right to privacy by ordering her to undergo psychological assessments that went beyond the essential functions of her job as a firefighter.  (SAC COA ¶ 6.)  The Fourth Amendment protects an individual's "reasonable expectation of privacy," and their right to be free from warrantless searches and seizures.  *Sherrod v. McHugh*, 334 F. Supp. 3d 219, 242 (D.D.C. 2018) (citing U.S. Const. amend. IV; *Groh v. Ramirez*, 540 U.S. 551, 558–59 (2004)).

McCrea cites no legal authority for the proposition that a municipal employer engages in a "search" or "seizure" when it requests medical documentation in order to determine whether a firefighter is fit to return to duty.  (*See* ECF No. 90, Pls. Resp. at pp. 14-15).[24]  Moreover, EMS was the driving force behind the request, not PFC.  Accordingly, McCrea's dispute is with EMS, not PFC.

### c.  *Fifth Amendment Due Process and Equal Protection*

McCrea claims her Fifth Amendment substantive and procedural due process rights were violated by unspecified Defendants' "malicious intent to deter due process" and "abuse of process."  (SAC COA ¶¶ 16-17.)  She further asserts that Defendants violated her Fifth Amendment equal protection rights by forcing her to undergo "unwarranted psychological assessments without cause."  (SAC COA ¶ 19.)

In response to PFC's motion to dismiss, McCrea further explains that her Fifth Amendment claims rest on:

- unidentified Board regulations that prevented her from maintaining her property interest in her employment (ECF No. 90, Pls. Resp. at 17-18);

- an "unwarranted" invasion of her privacy (*id*.); and

- "unfair and impartial" Board hearings, during which she did not receive due process. (*id*. at 18, 19).

McCrea also directs the court to three paragraphs in the SAC in which she complains about the first Board hearing, during which she was allegedly prohibited from offering evidence, and in

---

[24]  McCrea cites two cases, neither of which support her position: *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977) (where plaintiffs challenged the state's maintenance of a database with the names and address of persons who had obtained prescriptions for certain drugs, the Supreme Court noted that it had "never carried the Fourth Amendment's interest in privacy as far as the [Plaintiffs]" championed), and *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 457-58 (1977) (rejecting former President's constitutional privacy challenge to statute requiring federal government to take custody of and preserve presidential materials, and noting that any privacy interest involved was "weaker than that found wanting" in *Whalen*).

which she alleges that Dr. Morote (who is not named as a Defendant), expressed views about McCrea's diagnosis.  (*Id.* at 19) (citing SAC ¶¶ 87-89).

> i.  Due Process

The Fifth Amendment "guarantees that '[n]o person shall be . . . deprived of life, liberty, or property, without due process of law.'  The courts have interpreted the rights secured by the Due Process Clause to exist in two permutations: 'procedural' and 'substantive.'"  *New Vision Photography Program, Inc. v. D.C.*, 54 F. Supp. 3d 12, 27 (D.D.C. 2014) (citing *Zinerman v. Burch,* 494 U.S. 113, 125 (1990)) (alterations in the original).

> *a.  Procedural Due Process*

A procedural due process violation occurs when "a government official deprives a person of his property without appropriate procedural protections. . . .  Beyond the basic requirements of notice and an opportunity to be heard, the precise requirements of procedural due process are flexible."  *English v. D.C.*, 717 F.3d 968, 972 (D.C. Cir. 2013) (citations omitted).

McCrea does not explain how PFC violated her procedural due process rights by performing psychological assessments at the request of her employer, EMS.  McCrea admits that EMS directed her to visit PFC for an assessment after she reported the alleged assault.  (SAC ¶¶ 35, 43-45, 54.)  She also alleges that she was subsequently "forced" to attend "monitoring" sessions at PFC.  (SAC ¶¶ 14-15, 35, 40.)  McCrea met with an EMS supervisor and "vehemently protest[ed] the unwarranted order that she undergo a psychological assessment," but "was ordered . . . to cooperate with the administration of the psychological assessments," and was later terminated when she refused to provide additional medical documentation.  (*Id.* ¶¶ 40, 45, 97-99.)  Given these allegations, to the extent any due process was owed McCrea, it was owed by EMS, not PFC.

### b.  Substantive Due Process

"Substantive due process prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests."  *Washington Teachers' Union v. Bd. Of Educ.,* 109 F.3d 774, 781 (D.C. Cir. 1997) (quoting *Committee of United States Citizens Living in Nicaragua v. Reagan,* 859 F.2d 929, 943–44 (D.C. Cir. 1988)) (alterations and internal quotation marks omitted).  Substantive due process claims must demonstrate "grave unfairness."  *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988) (citations omitted).  To show "grave unfairness," McCrea must assert facts showing: "(1) a substantial infringement of the law prompted by personal or group animus, or (2) a deliberate flouting of the law that trammels significant personal or property rights."  *Crockett v. D.C. Metro. Police Dep't*, 293 F. Supp. 2d 63, 68 (D.D.C. 2003) (citing *Tri County Industries, Inc. v. District of Columbia,* 104 F.3d 455, 459 (D.C. Cir.1997)); *see Silverman v. Barry,* 845 F.2d 1072, 1080 (D.C. Cir. 1988)).  Viewing the facts in the light most favorable to McCrea, the court finds that she has not alleged facts suggesting that PFC flouted the law, infringed the law, or acted out of personal or group animus.  Therefore, her substantive due process claim is not actionable and will be dismissed with prejudice.

### ii.  Equal Protection

Although the parties did not address it, McCrea's equal protection claim likewise fails.  In order to state a "'class of one' equal protection claim," *3883 Connecticut LLC v. D.C.*, 336 F.3d 1068, 1075 (D.C. Cir. 2003), McCrea must allege facts showing that she "was subject to differential treatment *because of* membership in a protected class, such as one based on race" or "that [she] was arbitrarily and intentionally treated differently from others who are similarly situated—and the government has no rational basis for the disparity."  *Kingman Park Civic Ass'n*

*v. Gray*, 27 F. Supp. 3d 142, 158 (D.D.C. 2014) (emphasis in original) (internal citations omitted) (citing *Kelley v. District of Columbia,* 893 F. Supp. 2d 115, 122 (D.D.C. 2012); *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564–565 (2000)).  McCrea has not pled any facts suggesting differential or arbitrary treatment by PFC based on protected status.  Accordingly, as with her other constitutional claims, McCrea has pleaded no viable equal protection claim and therefore her § 1983 claim fails.

   6. <u>Section 1985 and 1986 Claims</u>

   42 U.S.C. §1985 "does not create any substantive rights, but only permits a private cause of action to sue for conspiracy to violate a federal right."  *Nanko Shipping, USA v. Alcoa, Inc.*, 107 F. Supp. 3d 174, 182 (D.D.C. 2015), *rev'd and remanded on other grounds*, 850 F.3d 461 (D.C. Cir. 2017) (citing *United Bhd. of Carpenters & Joiners,* 463 U.S. 825, 833 (1983) (other citations omitted).  As such, §1985 "serve[s] as a device through which vicarious liability for the underlying wrong may be imposed upon all who are a party to it, where the requisite agreement exists among them."  *Nanko Shipping,* F. Supp. 3d at 182 (citation omitted).  Because the court has found that her underlying claims fail, McCrea's §1985 claim also fails, as does her § 1986 claim.  *See Avila v. CitiMortgage, Inc.*, 45 F. Supp. 3d 110, 122 (D.D.C. 2014) (noting that "§ 1986 claims are predicated on the existence of § 1985 claims," and if the latter fails, the § 1986 claim also fails)  (*citing Herbin v. Hoeffel,* No. 99–7244, 2000 WL 621304, at *1 (D.C. Cir. 2000)). [25]  Accordingly, the court will dismiss both the §1985 and 1986 claims with prejudice.

**3.  Lois Hochhauser**

---

[25] McCrea's D.C. civil conspiracy claim fails for the same reason.  *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1393 (D.C. Cir. 1989) (citations omitted) (noting that civil conspiracy is not actionable in and of itself under federal or District of Columbia law).

McCrea contends that Lois Hochhauser, who was the EMS Board Chair during McCrea's first retirement Board hearing on November 6, 2014

- "dismissed" some of McCrea's concerns, as well as her treating physicians' recommendations for accommodations;

- repeatedly told McCrea she would be terminated if she did not return to full duty;

- "interjected or constricted" McCrea as she was "cross-examining" Dr. Morote, "at one point expressly telling McCrea that she was not allowed to confront and/or challenge" the witness about her medical findings; and

- "coached" Dr. Morote "into making statements that the sexual harassment incident did not exist, therefore the Plaintiff could not have had PTSD."

(SAC. ¶¶ 87-89.)  Despite repeated admonitions from this court, McCrea has refused to indicate in her SAC which of her many claims apply to which defendant.  She now attempts to clarify that she alleges claims for due process, equal protection, defamation and conspiracy against Hochhauser based on Hochhauser's "concerted role to conspire under color of the law with various Defendants, in all of the Plaintiff's claims."  (ECF No. 81, Pls. Resp. at 3-4, 8-10.)[26]

None of these claims are viable.  McCrea has not alleged that Hochhauser made defamatory statements.  In her response to Hochhauser's motion to dismiss, McCrea challenges the Board's "written decision," (ECF No. 81, Pls. Resp. at 10), which did not involve Hochhauser.  (*See* SAC, Attachment E.)  Thus, there are no factual allegations which might establish a defamation claim against Hochhauser.

---

[26]  McCrea also mentions forgery with respect to Hochhauser (ECF No. 82, Pls. Resp. at 3), but as discussed above, forgery is not an actionable civil offense under District of Columbia law. *See Nwaoha v. Onyeoziri*, No. CIV A 04-1799 GK, 2006 WL 3361540, at *4 (D.D.C. Nov. 20, 2006).

More importantly, the court agrees with Hochhauser that she is immune from suit in her capacity as Board chair or "administrative law judge." McCrea argues that Hochhauser's conduct involved actionable "administrative," rather than "judicial" functions, thereby making the immunity defense unavailable. (ECF No. 81, Pls. Resp. at 6.) But the law does not support McCrea's position.

In *Daul v. Meckus*, 897 F. Supp. 606, 608-11 (D.D.C. 1995), *aff'd sub nom. Daul v. Meckus*, 107 F.3d 922 (D.C. Cir. 1996), the district court dismissed constitutional claims against an administrative law judge and a "judicial officer" who issued decisions on appeal from an animal welfare license revocation. Citing "a long line of Supreme Court precedent," the court noted that judges are generally immune from lawsuits for money damages, and such immunity "may not be overcome even by allegations of bad faith or malice." *Daul*, 897 F. Supp. at 610 (citing *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Butz v. Economou*, 438 U.S. 478, 513-4 (1978)) (some citations omitted). The court found that administrative law judges and "judicial review officers" "exercise independent judgment in performing adjudicatory" duties that are functionally similar to those performed by federal and state trial and appellate judges. *Daul*, 897 F. Supp. at 610 (citing *Butz v. Economou*, 438 U.S. at 513–14).

The D.C. Circuit explained the reasons behind this grant of immunity:

> Judicial immunity from liability, as with absolute immunity in other contexts, "is justified and defined by the <u>functions</u> it protects and serves, not by the person to whom it attaches." In other words, "Judges have absolute immunity not because of their particular location within the Government but because of the special nature of their responsibilities." It is therefore unsurprising that absolute immunity has been extended to cover executive branch officials who perform either quasi-judicial functions that are "functionally comparable' to those of a judge" or prosecutorial functions "intimately associated with the judicial phase of the criminal process."

*Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 682 (D.C. Cir. 2009) (emphasis in original) (citations omitted). This "functional approach" considers certain factors, including

(1) whether the functions of the official in question are comparable to those of a judge; (2) whether the nature of the controversy is intense enough that future harassment or intimidation by litigants is a realistic prospect; and (3) whether the system contains safeguards which are adequate to justify dispensing with private damage suits to control unconstitutional conduct.

*Atherton*, 567 F.3d at 683 (citing *Wagshal v. Foster,* 28 F.3d 1249, 1252 (D.C. Cir. 1994); *Butz*, 438 U.S. at 512)).  The Supreme Court has "made clear that 'it would be untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials."  *Ford v. Donovan*, 843 F. Supp. 2d 41, 43 (D.D.C. 2012) (citing *Butz*, 438 U.S. at 818 n. 30).

Applying the functional approach, the court finds that Hochhauser is entitled to immunity.  The Board was established to make decisions "with respect to retirement and disability," D.C. Code § 5-722, which are likely to create intense controversy where "future harassment or intimidation by litigants is a realistic prospect."  *Atherton*, 567 F.3d at 683.

Moreover, in this case, Hochhauser was performing judicial functions "comparable to those of a judge," and the Retirement Board review system contains "safeguards which are adequate to justify dispensing with private damage suits to control unconstitutional conduct."  *See Atherton*, 567 F.3d at 683 (citations omitted); *Clinton v. Jones*, 520 U.S. 681, 695 (1997) ("As our opinions have made clear, immunities are grounded in 'the nature of the function performed, not the identity of the actor who performed it.'") (citation omitted).  The Board is tasked with considering retirement decisions "fairly and equitably."  D.C. Code § 5-722.  In addition, the court takes judicial notice of the "Police and Fire Retirement System, Electronic-District Personnel Manual," which provides that applicants at Board hearings "have the right to be represented by an attorney or a non-legal representative," testify, and offer documentary and live witnesses.  *See* 7 DCMR § 2503.1(a); 2503.4.  The Board has rules for serving process, issuing subpoenas, and considering petitions for reconsideration of interim decisions.  7 DCMR

§§ 2505; 2510; 2525.  Once the Board reaches a decision, which must be signed by the

Chairperson, 7 DCMR § 2522.2, the D.C. Office of Personnel issues the Board's final "written

decision with accompanying findings of fact and conclusions of law."  7 DCMR § 2523.

Appeals from the Board's final decision "may be taken to the District of Columbia Court of

Appeals." 7 DCMR § 2529.2.[27]

Given these procedures, the court is not persuaded by McCrea's argument that as Board

Chair Hochhauser was engaged in "administrative," rather than judicial functions.  As with her

arguments regarding D.C. Council immunity, McCrea cites to cases that are inapposite to the

facts she alleges in her SAC.  (*See* ECF No. 81, Pls. Resp. at 5-10.)[28]  Moreover, Hochhauser's

immunity does not foreclose any viable constitutional claims against the City for the Board's

handling of the administrative hearings.  Therefore, the court will grant Hochhauser's motion to

dismiss with prejudice.

## D.  CONCLUSION

For the reasons set forth above, the court will dismiss the claims asserted against the D.C.

Council, the PFC Associates Defendants, and Lois Hochhauser with prejudice.  The court will

also dismiss with prejudice the following claims asserted against all Defendants: fraud on the

---

[27]  McCrea unsuccessfully challenged the Board's decision in D.C. Superior Court, the D.C. Court of Appeals, and the United States Supreme Court.  *See McCrea v. D.C. Police & Firefighters' Ret. & Relief Bd.*, 199 A.3d 208, 209 (D.C. 2019), *cert. denied*, *McCrea v. D.C. Police & Firefighters' Ret. & Relief Bd.*, ___ U.S.___, 140 S. Ct. 85 (2019).

[28]  McCrea mistakenly relies on cases such as *Forrester v. White*, 484 U.S. 219, 220 (1988) (resolving the issue of "whether a state-court judge has absolute immunity from a suit for damages under 42 U.S.C. § 1983 for his decision to dismiss a subordinate court employee"), and *Ex Parte Virginia,* 100 U.S. 339 (1879) (finding that a judge's creation of a jury list that excluded Blacks was not a judicial function, but instead "merely a ministerial act" "often given to county commissioners, or supervisors, or assessors," or previously to sheriffs").

court, constructive discharge, spoliation of evidence and fabrication of evidence.

Date:  March 31, 2021

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge