## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **NICOLE RENA MCCREA**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 16-cv-0808 (TSC) |
| ) | |
| **DISTRICT OF COLUMBIA, et al.**, ) | |
| ) | |
| Defendants. ) | |
| ) | |

### MEMORANDUM OPINION

Plaintiff Nicole McCrea is a former firefighter with the District of Columbia Fire and Emergency Medical Services Department (EMS).  McCrea, who is proceeding *pro se,* alleges that in May 2013, two fellow firefighters sexually assaulted her while she was on duty.  After reporting the incident, EMS managers, city employees and mental health professionals allegedly conspired to deny her requests to classify her subsequent behavioral health challenges as job-related injuries and to force her into retirement.

Before the court is a motion to dismiss filed by the District of Columbia, Mayor Muriel Bowser, the D.C. Police and Firefighters' Retirement and Relief Board, as well as D.C. government employees Frieda Cardwell, Travis Chase, Gregory Dean, Michael Donlon, Kenneth Ellerbe, Denise Gardner, Raymond Gretz, Josh Henline, Lela Jones, Alan Noznesky, William Sarvis, and Gitana Stewart-Ponder (collectively, the D.C. Defendants).  (ECF No. 79.)  For the reasons set forth below, the court will GRANT the motion in part and DENY the motion in part.

## I.      BACKGROUND

### A.  Factual Background

The background facts alleged in this case are set forth more fully in this court's March 31, 2021, companion Memorandum Opinion.  (ECF No. 113.)  In sum, as a result of her May 2013 alleged assault, McCrea began experiencing stress, along with other cognitive and physical symptoms, and was placed on medical leave the following month.  (SAC ¶¶ 11–13, 15.)[1] Sometime later she was diagnosed with acute stress reaction and sought to have her symptoms treated as "performance on duty" (POD) injuries, but her request was denied, and she subsequently filed an administrative appeal.  (*Id*. ¶¶ 15–18, 20.)  EMS and the Metropolitan Police Department (MPD) conducted investigations, and McCrea filed internal complaints against her alleged attackers and several supervisors.  (*Id*. ¶¶ 6, 10, 25.)

In January 2014, McCrea's physician approved her request to return to light duty, but she claims EMS instead "forced" her to attend "monitoring sessions" with mental health professionals from Police and Firefighter Associates, LLC (PFC), an entity that contracts with EMS to provide healthcare services.  (SAC ¶¶ 33, 35); *see Feirson v. District of Columbia,* 506 F.3d 1063, 1066 (D.C. Cir. 2007) (discussing PFC associate's relationship with EMS).  A PFC psychologist issued a report requiring McCrea to undergo a battery of psychological tests.  (SAC ¶¶ 43-45.)  As a result of those tests, PFC and EMS medical officials submitted a report to the

---

[1]   The operative complaint is the Second Amended Complaint ("SAC").  (*See* ECF No. 68.)  The SAC is divided into four sections, but two of them are numbered "3"; one section is labeled as the fact section and one is labeled as the "Cause of Action or Claim for Relief" section.  Each section contains numbered paragraphs and, in some instances, lettered subparagraphs.  To avoid confusion, the court will cite to the first section, containing the factual allegations, as "SAC" followed by the appropriate paragraph (¶) number or page (p.) number.  (*See* SAC pp. 10–46.) The section "3," containing the causes of action, will be referred to as "SAC COA," followed by the appropriate paragraph or page number.  (*See* SAC COA pp. 46–57.)

District of Columbia Police and Firefighters' Retirement and Relief Board (the "Board"),

concluding that McCrea suffered from an "unspecified anxiety disorder" that prevented her from

returning to "performance of full duty," and recommending involuntary non-POD disability

retirement.  (SAC ¶ 59; SAC, Attachment D, 4, 7–8.)  McCrea appealed the recommendation and

repeatedly sought permission to return to work with "reasonable accommodations" as set forth

by her treating physicians, but EMS required that she return to PFC for evaluation before

deciding on her request.  (SAC ¶¶ 75, 81–83.)  Although she signed a waiver allowing PFC to

obtain her personal medical information, McCrea later changed her mind and refused to allow

her treating physicians to answer PFC's questions, arguing that the inquiries violated the

Americans with Disabilities Act (ADA) and the Health Insurance Portability and Accountability

Act (HIPAA).  (*Id.* ¶¶ 83–85)

After several hearings, the Board ordered McCrea to direct her treating physicians to

provide the requested information, but she refused, and the Board ultimately ordered McCrea's

involuntary retirement due to non-POD disability.  (*Id.* ¶¶ 92, 97–98, 108.)  The Board

concluded that McCrea's "paranoia and distrust is so pervasive" that she "could no longer work

effectively with a team," thereby posing "a risk to herself and to the public" because she could

not perform the "full duties of a firefighter."  *McCrea v. D.C. Police & Firefighters' Ret. &*

*Relief Bd.*, 199 A.3d 208, 211 (D.C. 2019), *cert. denied*, 140 S. Ct. 85 (2019).  McCrea

unsuccessfully challenged the Board's decision in the District of Columbia Court of Appeals and

the United States Supreme Court.  *Id.*

In this lawsuit, McCrea challenges the Board's decision to deny her accommodation

requests, classify her ailments as non-POD injuries, and force her to retire.  In so doing, she

challenges the legality of actions taken by the Board, EMS employees, numerous other D.C.

employees, PFC, the Mayor and the D.C. Council—all of whom she contends conspired against her. This opinion address only those claims asserted against the Board, the Mayor, EMS and the individual D.C. employees.[2]

## B. Procedural Background

This court repeatedly warned McCrea that her Complaint was deficient because she failed to identify which of her claims were asserted against which Defendants and the actions each Defendant allegedly took in violation of the law. (*See* ECF No. 10.) McCrea's SAC is still no model of clarity or brevity at fifty-seven pages, including approximately 170 numbered and lettered paragraphs. Although it contains a "claim for relief" section, roughly twenty-six federal and state claims are scattered throughout. Moreover, despite numerous orders from this court specifically reminding her of the deficiencies in her original Complaint, (ECF Nos. 10, 66; ECF No. 61, Tr. 4, 7, 16), McCrea largely fails to identify which claims she asserts against which of the approximately twenty-seven Defendants. (*See* SAC COA pp. 46–56.)

After the D.C. Defendants filed the current motion to dismiss, this court advised McCrea that her failure to respond to the D.C. Defendants' arguments might result in the court treating the arguments as conceded. (ECF No. 80); *see* LCvR 7(b). While her response to the motion is rambling, McCrea does raise several arguments and attempts to clarify which claims she is asserting against each Defendant. While the Defendants contend that McCrea cannot amend her complaint by way of responsive brief, this court has an obligation to consider the SAC "in light of all filings, including filings responsive to a motion to dismiss." *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015); *Schnitzler v. United States*, 761 F.3d 33, 38

---

[2] The court's companion Opinion addresses McCrea's claims against the remaining Defendants who entered an appearance.

(D.C. Cir. 2014) (noting "the district court's obligation to construe a pro se plaintiff's filings

liberally, and to consider his filings as a whole before dismissing a complaint"). Accordingly,

the court has taken into consideration McCrea's Motion for Relief from Judgment, which she

cites in response to Defendants' motion to dismiss. (*See* ECF No. 51, Mot. for Relief from J.)

## II. STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim tests the

legal sufficiency of a complaint. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible

when the facts asserted allow the court to "draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. McCrea's factual allegations need

not be "detailed," but "the Federal Rules demand more than 'an unadorned, the-defendant-

unlawfully-harmed-me accusation.'" *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 86

(D.D.C. 2016) (quoting *Twombly*, 550 U.S. at 570).

*Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards

than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nonetheless, a *pro se* plaintiff must still "plead

'factual matter' that permits the court to infer more than the mere possibility of misconduct."

*Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Iqbal*, 556

U.S. at 679). Pursuant to Fed. R. Civ. P 8(a), a complaint must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), so that

the defendant receives "fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (citation and alterations omitted).

### III. ANALYSIS

**A. Official vs. Individual Capacity Claims**

Because claims against the D.C. Defendants in their official capacities are equivalent to claims against the municipality, McCrea does not object to dismissal of all claims asserted against the defendants in their official capacities. (*See* ECF No. 98, Pls. Resp. at 8–9.)  The court will therefore address the official capacity claims against the District, as well as the individual capacity claims against each D.C. Defendant.

**B. Claims against D.C. and Claims Against Individual Defendants in Their Official Capacities:**

1. D. C. Police and Firefighter's Retirement and Relief Board and McCrea's state law claims

On February 12, 2015, the Board held a third hearing at which it considered the recommendation to involuntarily retire McCrea due to non-performance POD disability.  (SAC ¶¶ 93–94; SAC, Attachment E 14–15.)  PFC's Dr. Gloria Morote testified regarding McCrea's condition, and McCrea challenged those assessments.  (*See* SAC ¶ 99; *see* SAC, Attachment E 14–15.)  McCrea also "urged the Board to adopt the conclusions of her treating psychologist . . . that Ms. McCrea suffered from Post-Traumatic Stress Disorder, was fit to return to work on a limited-duty status, and should be reinstated." *McCrea v. D.C. Police & Firefighters' Ret. & Relief Bd.*, 199 A.3d 208, 211 (D.C. 2019), *cert. denied*, 140 S. Ct. 85 (2019).  McCrea also reiterated her belief that the Board's request for additional information from her treating physicians violated her rights under the ADA and HIPAA.  (*See* SAC ¶ 99; *see* SAC, Attachment E 14–15.)

On April 30, 2015, the Board issued a decision ordering McCrea's involuntary non-POD disability retirement. (SAC ¶ 108.) McCrea subsequently challenged the decision in the District of Columbia Court of Appeals, where she argued the Board lacked "competent, objective, probative and reliable evidence" to support its decision. *McCrea*, 199 A.3d at 210. Alternatively, she argued that the non-POD determination should be reversed. *Id.* The Court of Appeals rejected her arguments, reasoning that the Board's decision was based

> on Ms. McCrea's demeanor during the three days of hearings, where she was "visibly and extremely mistrustful and paranoid;" her refusal to comply with the Clinic's requests for treatment information from her treating psychologist; her failure to submit any documentation, including diagnostic test results or clinical notes that would support Dr. Mormile's diagnosis and treatment recommendations; and the record evidence as a whole. The Board weighed this evidence against the Department's evidence, which included testimony, reports, standardized tests, and the diagnosis of the Clinic's psychologist, Dr. Morote, and found that the Board's interaction with Ms. McCrea "strongly supports Dr. Morote's opinion that [Ms. McCrea's] paranoia and distrust is so pervasive that it would prevent [her] from performing the full duties of a firefighter because she could no longer work effectively with a team." Further, the Board concluded, Ms. McCrea's inability to work as a team, which is central to the functions of a firefighter, is evidence that she is unable to perform the functions of a firefighter safely in life-or-death situations and she poses a risk to herself and to the public.
>
> The Board was unable to assign Dr. Mormile's conclusion and recommendation much weight because Dr. Mormile did not submit any corroborative evidence like testing reports or clinical notes. Further, Dr. Mormile's recommendation was contradictory as she stated that Ms. McCrea could return to full duty and then listed "a number of limitations which prevented less-than-full duty status."

*McCrea*, 199 A.3d at 211 (alterations in the original).

Although the D.C. Court of Appeals rejected McCrea's arguments, she raises them again here. She contends that the Board operated outside of its statutory jurisdiction "as an impartial trier of facts to create a 'material fact'; an [sic] unsubstantiated and subjective demeanor assessments in its written Decision, outside of the record." (SAC COA ¶ 7(c).) McCrea takes issue with the Board's finding that her demeanor supported Dr. Morote's opinion that McCrea

was paranoid, distrustful, and suffered from an adjustment disorder, thereby making a return to work impossible.  (*See id.*)  She also alleges that the Board disregarded the truth and that its findings stigmatized her, thereby harming her future job prospects.  (SAC COA ¶ 7(d), (f).)

The Board asks this court to dismiss all claims against it because it is *no sui juris*.  *See Fields v. D.C. Dep't of Corr.*, 789 F. Supp. 20, 22 (D.D.C. 1992) ("[A]gencies and departments within the District of Columbia government are not suable as separate entities.") (citing *Byrd v. District of Columbia,* 1991 WL 336038, 119 U.S. LEXIS 12775, at *7 (D.D.C. Sept. 12, 1991); *Roberson v. D.C. Bd. of Higher Educ.*, 359 A.2d 28, 31 n.4 (D.C. 1976).  McCrea agrees and asks this court to allow her claims to proceed against the District of Columbia, which is a named defendant in this action.  (ECF 98, Pls. Resp. at 22–23.)  Accordingly, the court will treat McCrea's claims against the Board as claims asserted against the District of Columbia.

In so doing, however, the court must dismiss all of McCrea's state law claims relating to the Board's decision to involuntarily retire McCrea on non-POD disability.  The District correctly argues that McCrea's avenue for judicial review of the Board's decision lies in the D.C. Court of Appeals.  (*See* ECF No. 79, Defs. MTD at 11, 13–14.)

In *O'Rourke v. District of Columbia Police & Firefighters' Retirement & Relief Board*, 46 A.3d 378 (D.C. 2012), the D.C. Court of Appeals noted that the Police and Firefighters' Retirement and Disability Act (PFRDA), D.C. Code § 5–701 *et seq.*,

> provides that police and firefighters may be eligible for two types of disability retirement annuities: one for disabling injuries or diseases incurred or aggravated in the performance of official duty ("POD"), as set forth in D.C. Code § 5-710, and the other for disabilities due to injury or disease not received or contracted in the performance of duty, as set forth in § 5-709.  The main difference between the two annuities is the rate of compensation.

*O'Rourke*, 46 A.3d. at 382.  When a plaintiff brings a claim relating to disability benefits from the police and firefighter retirement fund, their "exclusive remedy is through the Police and

Firefighters [sic] Retirement and Disability Act." *Hope v. D.C. Metro. Police Dep't*, No. 95-7049, 1995 WL 791572, at *1 (D.C. Cir. Dec. 5, 1995) (citing D.C. Code Ann. §§ 4-601, 4-616; *Ray v. District of Columbia*, 535 A.2d 868, 970–71 (D.C. 1987)).

In *Nunnally v. D.C. Police & Firefighters' Retirement & Relief Board*, 184 A.3d 855 (D.C. 2018), a case similar to this one, PFC recommended disability retirement for a firefighter who alleged she had been sexually harassed on the job and subsequently experienced years of workplace stress and abuse. The Board accepted the retirement recommendation, but, relying on D.C. Court of Appeals precedent, classified her injuries as non-POD. *Id.* at 857–58. The D.C. Court of Appeals upheld the Board's decision, explaining that both the POD and non-POD retirement provisions are "components of the PFRDA, which serves as the worker's compensation plan for the District's police and firefighters. Like other such schemes, the PFRDA provides swift and certain compensation, but that compensation is limited and other remedies, such as common law suits, are precluded." *Id.* at 858–59 (citations and internal quotation marks omitted).

Moreover, judicial review of PFRDA decisions is limited. The Police and Fire Retirement System, Electronic-District Personnel Manual regulations state: "The final action of the Board in cases coming before it shall constitute the final administrative action within the District of Columbia Government" and "[a]n appeal from final administrative action, . . . . may be taken to the District of Columbia Court of Appeals. . . ." 7 DCMR §§ 2529.1; 2529.2. Consistent with these regulations, the D.C. Code provides "for exclusive appellate review of administrative action" by the D.C. Court of Appeals. *Fair Care Found., A.G. v. D.C. Dep't of Ins. & Sec. Regul.*, 716 A.2d 987, 997 (D.C. 1998) (citation omitted); *O'Rourke*, 46 A.3d at 383 (noting that the D.C. Court of Appeals is "the final authority on issues of [PFRDA] statutory

construction" and "the ultimate interpreter of the statutory provisions from which the Board, as a creature of the legislature, derives its powers"); *see also* D.C. Code § 2-510 (an individual "suffering a legal wrong, or adversely affected or aggrieved, by an order or decision of the Mayor or an agency . . .  is entitled to a judicial review . . . upon filing in the District of Columbia Court of Appeals a written petition for review."); *Ne. Neighbors for Responsible Growth, Inc. v. AppleTree Inst. for Educ. Innovation, Inc.*, 92 A.3d 1114, 1122 (D.C. 2014) (noting that the D.C. Administrative Procedures Act "§ 2–510 provides for exclusive appellate review of administrative action in contested cases") (citations and internal quotations omitted).

McCrea ignores *Nunnally*, despite the D.C. Court of Appeals' reliance on that case in rejecting McCrea's retirement challenge.  *See McCrea*, 199 A.3d at 213 ("The PFRDA. . . provides compensation for disabling injuries . . . [and] precludes other civil remedies that may otherwise be available, such as remedies resulting from suits for common law torts.") (citing *Nunnally,* 184 A.3d at 859).  She insists that the D.C. Court of Appeals is not the exclusive forum in which to challenge the Board's decision.  (ECF No. 98, Pls. Resp. at 14, 18, 21; ECF No. 90, Pls. Resp. at 28.)  In support of her position, McCrea first relies on an exhibit attached to her SAC, a twenty-one-page Equal Employment Opportunity Commission (EEOC) enforcement guidance document titled "Workers' Compensation and the ADA."  (ECF No. 98, Pls. Resp. at 14; SAC, Attachment 1.)  But McCrea does not direct the court to any specific provision in the document, nor does she explain how a federal EEOC guidance publication overrides the D.C. Code and D.C. case law interpreting the PFRDA.  As this court explained in its companion Opinion, McCrea's argument that the ADA and Rehabilitation Act preempt provisions in the PFRDA is without merit.  (*See* ECF No. 113.)

Next, citing two cases, *Johnson v. District of Columbia*, 528 F.3d 969 (D.C. Cir. 2008) and *Feirson v. District of Columbia*, 506 F.3d 1063 (D.C. Cir. 2007), McCrea appears to argue that she may seek relief from the Board's decision outside the D.C. Court of Appeals because the Defendants allegedly engaged in fraud in order to "sustain a fictious [sic] PERMANENT DISABILITY." (ECF No. 98, Pls. Resp. at14) (emphasis in original).  In her opposition to Defendants' motion to dismiss, McCrea explains that the "District of Columbia is liable for *all of the claims/or causes of action. Constitutional, Statutory, and Common law* articulated in the SAC." (ECF No. 98, Pls. Resp. at 24) (emphasis in original).

McCrea is wrong with respect to her state law claims, and her reliance on these two cases is curious because they undermine, rather than support, her position.  In *Feirson,* the D.C. Circuit found that "[t]he PFRDA is 'the exclusive remedy against the District of Columbia for uniformed personnel.'"  506 F.3d at 1068 (quoting *Lewis v. District of Columbia,* 499 A.2d 911, 915 (D.C. 1985)).  In *Johnson*, the Circuit upheld the district court's dismissal of state law claims brought by a police officer.  Even though the officer's injuries were classified as non-POD, he could not circumvent the PFRDA's remedial scheme and pursue state law remedies against the District.  528 F.3d at 972-73, 978-79; *Johnson v. District of Columbia*, 445 F. Supp. 2d 1, 7–8 (D.D.C. 2006) ("Even though this particular psychological injury is not compensable, PFRDA's comprehensive remedial scheme continues to bar a lawsuit against the District.").  McCrea has not proffered any legal authority calling *Nunnally*, *Jackson* or *Feirson* into question and therefore the court will dismiss with prejudice the state law claims against the District.[3]

---

[3]  Several of McCrea's state law claims are likewise not actionable against the District or any other D.C. Defendant.  The medical malpractice claim does not apply because none of the Defendants are medical providers and even if they were, McCrea does not indicate she gave 90-day notice of the lawsuit as required by statute.  *See* D.C. Code § 16-2802(a); *Diffenderfer v. United States*, 656 F. Supp. 2d 137, 139 (D.D.C. 2009) ("[A] legal action alleging medical

### 2.   Americans with Disabilities Act and Rehabilitation Act Claims

The ADA prohibits employers from discriminating "against a qualified individual on the

basis of [a] disability."  42 U.S.C. § 12112(a).  "The term 'qualified individual' means an

individual who, with or without reasonable accommodation, can perform the essential functions of

the employment position that such individual holds or desires. . . ."  42 U.S.C. § 12111(8).  An

employer can escape liability for a failure to accommodate if it can "demonstrate that the

accommodation would impose an undue hardship on the operation of the business."  42 U.S.C.

§ 12112.[4]

Because this court must view the facts in the light most favorable to McCrea, her ADA

and Rehabilitation Act claims survive.  She alleges that she requested reasonable

accommodations, as recommended by her treating physician, that would have allowed her to

return to work, but EMS would not accept the recommendations and in fact asked her to provide

additional information before it would consider her request.  While the viability of her claim at

the summary judgment stage appears tenuous given her apparent failure to provide the District

with the requested medical documentation, this court finds McCrea pleads enough facts at this

stage to survive a motion to dismiss.

---

malpractice shall not be commenced in the court unless the requirements of this section have
been satisfied.") (quoting D.C. Code § 16-2802(c) (emphasis omitted).
    As discussed in the companion Opinion, McCrea's spoliation, fraud on the court, forgery and
constructive discharge claims are likewise not actionable.

[4]  "The standards used to determine whether [the Rehabilitation Act] has been violated in a
complaint alleging employment discrimination . . .  shall be the standards applied under" the
ADA.  *Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C. Cir. 2002) (quoting 29 U.S.C.
§ 794(d)).

### 3. First Amendment Retaliation Claim

To assert a viable First Amendment retaliation claim, McCrea must proffer facts to show "(1) [s]he engaged in conduct protected under the First Amendment; (2) the defendant took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action taken against h[er]."  *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016) (citation and internal quotations omitted).

Applying this standard, the court finds that McCrea has pled sufficient facts to support her claim.  She alleges that she engaged in protected speech by complaining about the alleged assault, pursuing charges against the alleged harassers, and protesting EMS' request for more medical documentation.  (SAC ¶¶ 85, 87, 91, 96; SAC COA at 47 ¶ c.)  She claims that as a result of her protests, EMS retaliated against her by preventing her return to work and denying her request for POD disability retirement.  (*See id.*)  These allegations are enough to state a First Amendment retaliation claim, and the court will therefore deny the motion to dismiss.

### 4. Section 1981 Claim

To assert a viable §1981 claim, McCrea must identify an "impaired contractual relationship under which [she] has rights."  *Morris v. Carter Glob. Lee, Inc.*, 997 F. Supp. 2d 27, 37 (D.D.C. 2013) (quoting *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 476 (2006)).  She must also allege that the defendant intended to discriminate against her because of her race when it impaired those contractual rights.  *See Morris*, 997 F. Supp. 2d at 37; *Domino's Pizza,* 546 U.S. at 476.  McCrea "cannot merely invoke [her] race in the course of a claim's narrative and automatically be entitled to pursue relief.  Rather, [she] must allege some facts that demonstrate

that h[er] race was the reason for defendant's action." *Morris*, 997 F. Supp. 2d 27 at 37 (quoting *Bray v. RHT, Inc.,* 748 F. Supp. 3, 5 (D.D.C. 1990)).

McCrea's SAC mentions race twice. Without providing specifics, she indicates there was a "race and sex debate about the assault of a black female entertainer and the racially charged argument with Firefighter Michael Harrison prior to [her] assault." (SAC ¶ 7.)[5] She also mentions that she filed race, gender, retaliation and disability claims with the D.C. Office of Human Rights (DCOHR). (*Id.* ¶¶ 117, 119.)[6] These allegations do not support a §1981 claim.

The only decipherable race-based allegation in the SAC appears to involve two "similarly situated" white firefighters who were evaluated for disability and/or retirement, but McCrea does not explain if or how they were treated more favorably based on their race. (*Id.* ¶ 119.)

In a subsequent filing, however, McCrea specifically alleges that these two firefighters were treated more favorably because they were apparently allowed to take extended leave, were not required to undergo forced monitoring, and were not involuntarily retired. (ECF No. 90, Pls Resp. at 10; *see* SAC, Attachment L-1, pp. 2, 6–7.)[7] Although parties may not generally amend a complaint by way of responsive brief, *Smith v. Mayor*, 191 F. Supp. 3d 114, 116–17 (D.D.C. 2016), *aff'd sub nom. Smith v. Mayor, D.C.*, No. 16-7109, 2017 WL 2193615 (D.C. Cir. May 19, 2017), the court will consider these allegations and will deny the motion to dismiss with respect to her §1981 claims. At the summary judgment stage, however, McCrea will have to establish that these other firefighters are appropriate comparators.

---

[5]  McCrea does not disclose her race, but a report from her treating physician indicates that she is African-American. (*See* ECF No. 90, Attachment H-11.)

[6]  The outcome of the DCOHR proceedings or any additional EEO proceedings are unclear.

[7]  McCrea cites to the subsequent filing in her response to the motion to dismiss.

**5. Section 1983 Claim**

In order to bring a §1983 claim against the District, McCrea must assert facts sufficient to establish municipal liability pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). As the D.C. Circuit has noted:

> The law is well-settled that, to state a cognizable claim of municipal liability, the complaint must plausibly allege that "a custom or policy of the municipality caused the violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003); *see Monell*, 436 U.S. at 694, 98 S. Ct. 2018. Simply alleging missteps by some municipal employees will not suffice. Instead, to state a claim that a municipal policy or custom caused their constitutional injury, [a Plaintiff must] plausibly allege one of the following theories of liability: (i) "the explicit setting of a policy by the [District] government that violates the Constitution," (ii) unconstitutional action by a "policy maker" within the District government, (iii) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom,'" or (iv) "the failure of the [District] government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Baker*, 326 F.3d at 1306 (internal citations omitted). At least one of those potential bases for municipal liability must be adequately pled for a Section 1983 claim to withstand a motion to dismiss for failure to state a claim. *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015).

*Jones v. District of Columbia*, 715 F. App'x 1, 2–3 (D.C. Cir. 2018).

McCrea's §1983 claim against the District fails to meet this standard. Her random references to "deliberate indifference" are insufficient to establish a §1983 claim where she simply proffers legal conclusions sprinkled with a few facts that do not support liability of any kind, much less municipality liability. (*See* SAC ¶ 104) (alleging a supervisor had knowledge of "violations with deliberate indifference to the consequences" where a subordinate filed "frivolous" and "vexatious" motions in an administrative proceeding).

**6.  Due Process and Equal Protection Claims**

    a.  <u>Equal Protection</u>

In order to state a "'class of one' equal protection claim," *3883 Connecticut LLC v. D.C.*,
336 F.3d 1068, 1075 (D.C. Cir. 2003), McCrea must allege facts establishing that she "was
subject to differential treatment *because of* membership in a protected class, such as one based
on race; or (2) that [she] was arbitrarily and intentionally treated differently from others who are
similarly situated—and the government has no rational basis for the disparity." *Kingman Park
Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 158 (D.D.C. 2014) (emphasis in original) (internal
citations omitted) (citing *Kelley v. District of Columbia,* 893 F. Supp. 2d 115, 122 (D.D.C.
2012); *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564–565 (2000)).  McCrea's allegations that
EMS treated her less favorably than White firefighters who were on disability leave are enough
to support an equal protection claim, and therefore the District's motion to dismiss as to this
claim will be denied.

    b.  <u>Due Process</u>

Although the parties did not address this argument, McCrea asserts that her Fifth
Amendment substantive and procedural due process rights were violated by Defendants'
"malicious intent to deter due process" and "abuse of process."  (SAC COA ¶¶ 16–17.)  She
further explains that her Fifth Amendment claims rest on "unfair and impartial" Board hearings,
during which she did not receive due process because the Board: 1) prohibited her from offering
evidence at the first hearing; and 2) allowed Dr. Morote to express views about McCrea's
diagnosis.  (ECF No. 90, Pls. 18, 19) (citing SAC ¶¶ 87–89).

The Fifth Amendment "guarantees that '[n]o person shall be . . . deprived of life, liberty,
or property, without due process of law.'  [Courts] have interpreted the rights secured by the Due
Process Clause to exist in two permutations: 'procedural' and 'substantive.'" *New Vision*

*Photography Program, Inc. v. District of Columbia*, 54 F. Supp. 3d 12, 27 (D.D.C. 2014) (citing *Zinermon v. Burch,* 494 U.S. 113, 125 (1990)). [8]  The court will deny the motion to dismiss as to both the procedural and substantive due process claims.

i.     *Procedural Due Process*

A procedural due process violation occurs when "a government official deprives a person of his property without appropriate procedural protections. . . .  Beyond the basic requirements of notice and an opportunity to be heard, the precise requirements of procedural due process are flexible." *English v. District of Columbia*, 717 F.3d 968, 972 (D.C. Cir. 2013) (citations omitted).  In light of this flexible standard, the court finds that the Board's consideration of Dr. Morote's testimony did not violate McCrea's due process rights because the Board had a duty to consider relevant medical testimony regarding McCrea's diagnosis and her ability to return to work.

On the other hand, viewing the facts in the light most favorable to McCrea, her allegation that the Board prevented her from introducing evidence could constitute a due process violation. Pursuant to the Board regulations, 7 DCMR § 2511.1, "evidence shall be taken [by the Board] in conformity with" the D.C. Code regulation on "contested cases," which provides:

> Any oral and any documentary evidence may be received, but the Mayor and every agency shall exclude irrelevant, immaterial, and unduly repetitious evidence.  Every party shall have the right to present in person or by counsel his case or defense by oral and documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts.

D.C. Code § 2-509(b).

---

[8]   The court assumes, without deciding, that as a D.C. firefighter, McCrea has a property interest in her employment.

Refusing to allow "relevant" or "material" evidence could form the basis for a procedural due process claim.  Accordingly, the court will deny the motion on the procedural due process claim.

### ii.    Substantive Due Process

"Substantive due process prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests." *Wash. Tchr.'s Union Loc. No. 6 v. Bd. of Educ.*, 109 F.3d 774, 781 (D.C. Cir. 1997) (quoting *Comm. of U.S. Citizens Living in Nicar. v. Reagan*, 859 F.2d 929, 943–44 (D.C. Cir. 1988)) (alterations and internal quotation marks omitted).  Substantive due process claims must demonstrate "grave unfairness." *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988) (citations omitted).  To show "grave unfairness," McCrea must assert facts showing: "(1) a substantial infringement of the law prompted by personal or group animus, or (2) a deliberate flouting of the law that trammels significant personal or property rights." *Crockett v. D.C. Metro. Police Dep't*, 293 F. Supp. 2d 63, 68 (D.D.C. 2003) (citing *Tri Cnty. Indus., Inc. v. District of Columbia,* 104 F.3d 455, 459 (D.C. Cir. 1997)); *see Silverman v. Barry,* 845 F.2d 1072, 1080 (D.C. Cir. 1988)). The parties have not briefed this issue and the court declines to address it without the benefit of briefing.  Accordingly, the court will deny the District's motion to dismiss the substantive due process claim.

### 7.  Section 1985 and Section 1986 Claims

A § 1985 civil conspiracy involves a "combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an *agreement* between the parties to inflict a wrong against or injury upon

another, and an overt act that results in damage." *McCreary v. Heath*, No. CIV.A. 04-0623 PLF, 2005 WL 3276257, at \*5–6 (D.D.C. Sept. 26, 2005) (emphasis in original) (internal quotations and citations omitted).  "To survive a motion to dismiss, a plaintiff must set forth more than just conclusory allegations of an agreement." *Id.* (citations omitted).

McCrea has not cleared this bar.  She fails "to allege the existence of any events, conversations, or documents indicating that there was ever an agreement or 'meeting of the minds' between any of the defendants to" illegally deny her the opportunity to return to work or to deny her POD disability.  *See McCreary*, 2005 WL 3276257, at \* 5.  McCrea's SAC suffers from the same infirmity as that in *Brady v. Livingood*, 360 F. Supp. 2d 94 (D.D.C. 2004).  There, the court dismissed a § 1985 claim where the plaintiff claimed defendants "'agreed among themselves' to subject him to discriminatory acts [without asserting] facts suggesting that the defendants were acting in concert in furtherance of a shared goal." *Id.* at 104: *see also McCreary*, 2005 WL 3276257, at \*5–6 (rejecting conspiracy claim where plaintiff repeatedly made "conclusory statement[s] that a conspiracy exist[ed] and surmise[d] that all negative events related to his job occurred as a result of the conspiracy."); *Graves v. United States*, 961 F. Supp. 314,  321 (D.D.C. 1997) (dismissing claim where plaintiff merely alleged that his former employer "colluded" with a governmental agency to keep him underemployed, without putting forth "any facts showing the existence or establishment of an agreement"); *Estate of Phillips v. District of Columbia,* 257 F. Supp. 2d 69, 83 (D.D.C. 2003) (dismissing conspiracy claim where plaintiffs failed to specify how the defendants "acted in concert").  Because § 1985 claims provide the predicate for § 1986 claims, the latter claim also fails.  *See Avila v. CitiMortgage, Inc.*, 45 F. Supp. 3d 110, 122 (D.D.C. 2014) (*citing Herbin v. Hoeffel,* No. 99–7244, 2000 WL

621304, at *1 (D.C. Cir. 2000)).  Accordingly, the court will dismiss both the Section 1985 and 1986 claims.

### 8. HIPAA Claims

As discussed more fully in the companion Memorandum Opinion (ECF No. 113), McCrea's HIPAA claim is not actionable because there is no provision in that statute prohibiting employers from seeking additional medical information from an employee's treating physician after the employee signs a waiver allowing release of medical information.  (*See* SAC ¶¶ 81–83, 83–85.)  Moreover, HIPAA does not create a private right of action.  *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) (citing 42 U.S.C. §§ 1320d–1 to d-7); *Hudes v. Aetna Life Ins. Co*., 806 F. Supp. 2d 180, 196 (D.D.C. 2011), *aff'd,* 493 Fed. Appx. 107 (D.C. Cir. 2012).  Accordingly, the court will dismiss this claim with prejudice as asserted against all Defendants.

## C.  Claims Against Individuals in Their Individual Capacities

### 1.  Mayor Bowser

McCrea alleges that in the fall of 2013, several months after she appealed the non-POD decision, one of her family members offered to "use his connections" to gain McCrea access to then D.C. Council Representative and mayoral candidate Muriel Bowser.  (*See* SAC ¶¶ 28–29, 36.)  McCrea claims that from October through mid-November 2013, "a female that sounded like Muriel Bowser yet identifying herself as 'Karen Todd,' an attorney on Muriel Bowsers [sic] team contacted" McCrea via telephone.  (*Id.* ¶ 29.)  McCrea and Todd spoke several times over the course of ten days, during which time Todd "interviewed" McCrea about the alleged assault, as well as the subsequent MPD investigation, and tried to "steer the Plaintiff to 'let it go . . . repeatedly stating that the Plaintiff did not have a case.'"  (*Id.* ¶ 29) (alterations in the original.)

Around February or March of 2014, after her house was vandalized and flooded, McCrea contacted the same relative for assistance, at which time she was told that the relative "had been harassed" since connecting McCrea and Todd.  (*Id.* ¶ 36.)  The relative's business computer had been "hijacked" and the relative "mused about the possible connection" between "assisting [McCrea] and his misfortunes."  (*Id.*)  He subsequently refused to continue helping McCrea with her house.  (*Id.*)

McCrea alleges she subsequently gave Bowser (who by then had become Mayor) notice of this lawsuit via a letter to the D.C. Risk Management Office, as required by the D.C. Code. (*Id.* ¶¶ 101, 111; SAC, Attachment B 7–11, 14–17.)  McCrea's SAC contains no other references to Bowser.

Without any supporting facts, McCrea claims that "Todd" was actually Bowser, who is subject to liability pursuant to the First Amendment (retaliation), the Fifth Amendment (equal protection), Sections 1981, 1983, 1985, and 1986, as well as under common law theories of conspiracy, fraud, negligence, negligent and intentional infliction of emotional distress.  (ECF No. 98, Pls. Resp. at 19.)[9]

McCrea's assertions regarding Bowser rest entirely on speculation.  Moreover, even if McCrea's suspicions are correct that "Todd" was indeed Bowser, the First Amendment retaliation claim fails because McCrea has not pointed to any actions Bowser took that might have deterred a reasonable person from exercising their right to speak out or seek relief through legal and administrative channels.  *See Aref*, 833 F.3d at 258 ("To prevail on h[er First

---

[9]  McCrea also purports to bring ADA and Rehabilitation Act claims against Bowser, but the ADA and Rehabilitation Act do not permit claims against individuals.  *Di Lella v. Univ. of D.C. David A. Clarke Sch. of Law*, 570 F. Supp. 2d 1, 7 n.8 (D.D.C. 2008) (citations omitted). Accordingly, the court will dismiss with prejudice McCrea's ADA and Rehabilitation Act claims against Bowser and the other individual Defendants in their individual capacities.

Amendment] retaliation claim, [Plaintiff] must show . . . . 'the defendant took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again . . . .'").

McCrea has pleaded no factual allegations of differential or arbitrary treatment based on her protected status and therefore has not asserted a viable equal protection claim.  *See Kingman Park*, 27 F. Supp. 3d at 158 (discussing the equal protection standard); *Vill. of Willowbrook,* 528 U.S. at 564–565.  Her allegations do not give rise to a viable § 1981 claim because she does not claim race-based disparate treatment, nor is there an any indication that there was a contractual relationship between McCrea and Bowser.  *See Morris*, 997 F. Supp. 2d at 37; *Domino's Pizza,* 546 U.S. at 476.

McCrea's allegations do not meet the standard for an intentional infliction of emotional distress claim because the alleged conduct—attempting to dissuade McCrea from pursuing legal claims—was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002) (quoting *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998)).  Her negligent infliction of emotional distress claim also fails, because she does not contend she suffered physical harm, or was in a zone of danger because of Bowser's alleged actions.  *See David v. District of Columbia*, 436 F. Supp. 2d 83, 89 (D.D.C. 2006) (citing *Jones v. Howard Univ., Inc.,* 589 A.2d 419, 424 (D.C. 1991)); *Jane W. v. President & Directors of Georgetown Coll.*, 863 A.2d 821, 826–27 (D.C. 2004) (citing *Jones*, 589 A.2d at 423)).  As to her claim for fraud, McCrea does not claim that Bowser made false representations upon which she relied.  *See Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977) ("The essential elements of common law fraud are: (1) a false representation (2) in reference to

material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action

is taken in reliance upon the representation. . . . [A]llegations in the form of conclusions on the

part of the pleader as to the existence of fraud are insufficient."); *see also* Fed. R. Civ. P. 9(b)

(requiring that the plaintiff "state with particularity the circumstances constituting [the] fraud.")

With regard to her negligence claims, McCrea proffers no facts showing that Bowser

owed her a duty and breached that duty. *See Youssef v. 3636 Corp.*, 777 A.2d 787, 792 (D.C.

2001) ("Generally, in order to prevail on a claim of negligence, the plaintiff must establish a duty

of care, a deviation from that duty, and a causal relationship between that deviation and an injury

sustained by the plaintiff.").

Because McCrea has not established liability for any underlying tortious conduct, she

cannot bring a common law civil conspiracy claim. *See Nader v. Democratic Nat'l Comm.*, 567

F.3d 692, 697 (D.C. Cir. 2009) ("A claim for civil conspiracy [under District of Columbia law]

fails unless the elements of the underlying tort are satisfied.") (citing *Exec. Sandwich Shoppe,*

*Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000)).  Likewise, she has not asserted

sufficient facts to support her federal statutory or constitutional causes of action and therefore her

claims under Sections 1983, 1985 or 1986 also fail. *See Pitt v. District of Columbia*, 491 F.3d

494, 510 (D.C. Cir. 2007) ("Section 1983 creates a cause of action to remedy certain

deprivations of federal rights, but it is not a source of substantive rights."); *Nanko Shipping, USA*

*v. Alcoa, Inc.*, 107 F. Supp. 3d 174, 182 (D.D.C. 2015), *rev'd and remanded on other grounds*,

850 F.3d 461 (D.C. Cir. 2017) (citing *United Brotherhood of Carpenters & Joiners, Loc. 610 v.*

*Scott*, 463 U.S. 825, 833 (1983) (other citations omitted) (noting that 42 U.S.C. Section 1985

"does not create any substantive rights, but only permits a private cause of action to sue for

conspiracy to violate a federal right"); *Kungle v. State Farm, Fire & Cas. Co.*, 48 F. Supp. 3d 67,

78 (D.D.C. 2014) (rejecting plaintiff's §1986 claim because such claims "are predicated on the existence of a § 1985 claim") (some citations omitted) (citing *Herbin v. Hoeffel*, No. 99–7244, 2000 WL 621304, at *1 (D.C. Cir. Apr. 6, 2000)).  Accordingly, the court will grant the District's motion to dismiss the individual liability claims against Bowser. [10]

### 2. Frieda Cardwell[11]

McCrea claims that after the alleged assault, she sought to have EMS classify her emotional injuries as POD, but Battalion Fire Chief Medical Services Officer Michael Donlon denied her request.  (*See* SAC, Attachment C1 at 2.)  McCrea appealed that decision, and Frieda Cardwell (EMS Medical Compensation Claims Specialist) wrote a memorandum recommending that the agency deny the appeal.  McCrea contends Cardwell's decision misrepresented relevant case law and contained fabrications.  (SAC ¶ 62.)  In her opposition to the motion to dismiss, McCrea further contends that Cardwell's decision was contrary to unspecified protocols and did not consider relevant evidence, including reports relating to the charges McCrea filed against the two firefighters who allegedly assaulted her.  McCrea also cites her Motion for Relief from Judgment and, without evidentiary support, contends that Cardwell engaged in a conspiracy with Battalion Chief Donlon and other decision makers.  (ECF No. 98, Pls. Resp at 13–14; *see* ECF

---

[10]   McCrea's common law conspiracy claim against all defendants also fails because she proffers only vague theories of a mass conspiracy, without supporting facts.  *See McMullen v. Synchrony Bank*, 164 F. Supp. 3d 77, 96–97 (D.D.C. 2016) ("In the District of Columbia, . . . . conclusory allegations of an agreement do not suffice; parties must allege facts showing the existence or establishment of an agreement.  This means that mere allegations that Defendants agreed among themselves to defraud the plaintiff, without alleging facts that indicate they took steps to further the fraudulent scheme, will not defeat a motion to dismiss.") (quoting *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 141 (D.D.C. 2013)) (internal quotations and some citations omitted).

[11]   This Defendant's last name is Cardwell, not Caldwell, as listed in the SAC.  (*See* Defs. MTD at 11 n.11.)

No. 51, Mot. for Relief from J.)  McCrea also points to the EEOC Enforcement Guidance publication regarding workers' compensation and the ADA, although she does not explain its relevance.  (ECF No. 98, Pls. Resp. at 14; SAC, Attachment A.)  Finally, she contends, without any supporting facts, that Cardwell is subject to liability under the First Amendment (retaliation), the Fifth Amendment (due process and equal protection), Sections 1981, 1983, and 1985, as well as common law fraud, fraudulent misrepresentation, tortious interference, and intentional infliction of emotional distress.  (ECF No. 98, Pls. Resp. at 14.)

McCrea cannot proceed with her state law claims against Cardwell, as they ultimately center on McCrea's disagreement with the Board's final decision to involuntarily retire her and deny her request to classify her injuries as POD.  As discussed above, those claims are not actionable under the PFRDA.

McCrea's federal claims against Cardwell fare no better.  While McCrea's First Amendment claim against the District survives, there is no indication that Cardwell's recommendation was the "but for" cause of McCrea's non-POD classification.  Instead, the Board made its decision after holding several hearings and considering several evaluations of McCrea.  *See Scahill v. D.C.*, 271 F. Supp. 3d 216, 234 (D.D.C. 2017), *aff'd*, 909 F.3d 1177 (D.C. Cir. 2018) ("To establish a claim for retaliation under the First Amendment, an individual must prove . . . there exists a causal link between the exercise of a constitutional right and the adverse action. To satisfy the causation link, a plaintiff must allege that his or her constitutional speech was the 'but for' cause of the defendants' retaliatory action.") (citation and internal quotation marks omitted); *Sims v. City of Madisonville*, 894 F.3d 632, 639–40 (5th Cir. 2018) (explaining that individual liability for a government official who violates constitutional rights turns on traditional tort principles of but-for causation).

McCrea's other federal claims against Cardwell similarly proffer no facts establishing liability.  McCrea alleges no facts suggesting Cardwell's recommendation was motivated by animus or that she arbitrarily and intentionally treated McCrea less favorably than similarly situated persons.  Therefore, even though McCrea's § 1981 and Fifth Amendment equal protection claims against the District survive, the claims fail as asserted against Cardwell in her individual capacity.  There is no indication that McCrea had any procedural rights that attached to Cardwell's early recommendation to classify McCrea's injuries as non-POD, and therefore her procedural due process claim fails.  *See Elkins v. District of Columbia,* 690 F.3d 554, 561 (D.C. Cir. 2012) ("To state a procedural due process claim, a complaint must suggest what sort of process is due.") (citation and internal quotation marks omitted).  Without a viable underlying federal claim, the Section 1983 and 1985 claims also fail.

### 3.  Travis Chase

McCrea claims that during the alleged May 2013 assault, she noticed Chase—a fellow firefighter—walking toward her, using his cell phone as a flashlight.  (SAC ¶ 4.)  He approached her bed and began reaching for her covers, but jumped when he saw McCrea staring at him and retreated after a few moments.  (*Id.* ¶ 4.)  McCrea subsequently testified against Chase during the EMS disciplinary board hearings.  (*Id.* ¶ 79.)

In her opposition, McCrea adds that Chase participated in the "sham" investigations associated with the disciplinary board proceedings and therefore is subject to liability for fraud, intentional infliction of emotional distress, and under Sections 1983 and 1985.  (ECF No. 98, Pls. Resp. at 22.)  She also notes—correctly—that Defendants did not proffer any arguments in support of dismissal with respect to Chase.  (*See* Defs. MTD at 1.)

Nevertheless, the court will exercise its right to consider the claims *sua sponte*.  *See Neitzke v. Williams*, 490 U.S. 319, 328–39 (1989) (discussing the district court's authority to dismiss claims *sua sponte* where the "factual contentions are clearly baseless").  As discussed above, the PFRDA forecloses state law claims associated with the Board's involuntary retirement decision.  Because McCrea's fraud and intentional infliction of emotional distress claims against Chase are separate from the Board decision, the PFRDA does not foreclose these claims.  Nonetheless, the court will deny the motion to dismiss the intentional infliction of emotional distress claim because McCrea asserts that Chase was involved in the alleged sexual assault.  *See Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C. 1980) ("[A]n action for intentional infliction may be made out even in the absence of physical injury or impact.").

However, Chase's alleged and unexplained participation in "sham" EMS disciplinary investigations does not rise to the necessary level of outrageous behavior, and McCrea's allegations against Chase do not establish a prima facie case for fraud because she has not pled with particularity the "time, place, and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud."  *United States ex rel. Williams v. Martin–Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (citations omitted).  McCrea's Section 1983 and 1985 claims necessarily fail because they cannot stand on their own.

### 4.  Gregory Dean

McCrea claims that during the EEO hearings, defendant Gitana Stewart-Ponder filed two motions to dismiss that were vexatious and frivolous.  (SAC ¶¶ 104, 110, 114.)  McCrea claims that Dean, who was then Fire Chief, was legally responsible for Stewart-Ponder's actions because he "had knowledge of and acquiesced in his subordinates' [sic] violations with

deliberate indifference to the consequences." (*Id.* ¶ 104.)  In her opposition, McCrea adds that Dean participated in the "sham investigations conducted by [EMS] under the guise of disciplinary trial boards."  (ECF No. 98, Pls. Resp. at 15.)  Without reference to any facts, McCrea claims Dean is liable under the First Amendment (retaliation), Sections 1981, 1983, 1985, and 1986, and for negligence and negligent infliction of emotional distress.  (*Id.*)

McCrea cannot proceed against Dean by relying on claims associated with Stewart-Ponder that, as discussed below, are not actionable.  And viewing the claims against Dean independently from those based on Stewart-Ponder, the court cannot discern what actions Dean took or failed to take, nor how his conduct resulted in a legally cognizable harm to McCrea. There is no indication he took any action that might "deter a person of ordinary firmness in plaintiff's position from speaking," in violation of the First Amendment.  *See Aref*, 833 F.3d at 258.  Nor is there any indication of unequal treatment that would support a Section 1981 claim. Consequently, because she has no viable substantive federal claim, McCrea's Section 1983, 1985, and 1986 claims will be dismissed.

McCrea's state law claims likewise fail.  With regard to her negligence claim, McCrea has proffered no facts showing that Dean owed her a duty and he breached that duty.  *See Youssef*, 777 A.2d at 792.  There are no allegations suggesting that McCrea suffered physical harm or was in a zone of danger as a result of Dean's alleged actions, and therefore the negligent infliction of emotional distress claim cannot go forward.  *See David*, 436 F. Supp. 2d at 89. Likewise, McCrea has not proffered facts showing the outrageous conduct required for an intentional infliction of emotional distress claim.  Accordingly, the court will dismiss McCrea's claims against Dean in his individual capacity.

### 5.  Michael Donlon

Donlon was a Battalion Chief and Medical Services Officer who verbally denied
McCrea's written request to classify her ailments as POD injuries.  McCrea claims the denial
violated "protocol," and was retaliation for her sexual harassment complaints.  (ECF No. 98, Pls.
Resp. at 17–18.)  Donlon also signed the May 14, 2014 report recommending that the Board
involuntarily retire McCrea with a non-POD designation, a report that McCrea contends was
"grossly skewed, subjective," and contained unsubstantiated information regarding her
psychological evaluation. (SAC ¶ 59.)

McCrea alleges Donlon "acted in concert with others" in violation of her First
Amendment rights (retaliation), her Fifth Amendment rights (equal protection), Sections 1981,
1983, and 1985, and brings common law theories of defamation, fraud, fraudulent
misrepresentation, tortious interference, and intentional infliction of emotional distress.  (ECF
No. 98, Pls. Resp. at 18.; SAC ¶ 59; *see* SAC, Attachment D; ECF No. 51, Mot. for Relief from J
at 18.)

McCrea's state law claims against Donlon are not actionable.  Although Donlon made a
recommendation, before the Board issued its final decision it held three hearings, at which it
considered evidence from McCrea and other sources.  McCrea's grievance therefore lies with the
Board, not Donlon, and she has exhausted all available means of challenging the Board's
decision.  She cannot circumvent the PFRDA's remedial scheme by attempting to bring state law
claims against one of the participants in the administrative process.

McCrea's federal claims against Donlon in his individual capacity also fail.  As with
Cardwell, there is no indication that Donlon's actions were the "but for" cause of the Board's
decision.  *See Scahill*, 271 F. Supp. 3d at 234 (discussing First Amendment "but for" standard).

McCrea asserts no facts suggesting discriminatory animus or improper motive based on protected class in violation of § 1981 or the Fifth Amendment equal protection clause, and the court will therefore dismiss the Section 1983 and 1985 claims against Donlon.

### 6.  Kenneth Ellerbe

McCrea alleges that former Fire Chief Ellerbe was present while the MPD investigated her alleged assault.  (SAC ¶ 6.)  McCrea subsequently sent him a written request for advance sick leave, which he denied without explanation.  (SAC ¶¶ 44, 64–65.)  McCrea asserts that the sick leave request was one of her requests for accommodations.  (ECF No. 98, Pls. Resp. at17.)  She contends Ellerbe is liable for violating the ADA, the Rehabilitation Act, the First Amendment (retaliation), the Fifth Amendment (equal protection), Sections 1981, 1983, and 1985, as well as intentional infliction of emotional distress and tortious interference.  (*Id.*)

As discussed above, McCrea cannot bring individual claims under the ADA or the Rehabilitation Act, and therefore those claims against Ellerbe will be dismissed.  McCrea's § 1981 and equal protection claims are unsupported by factual allegations of unequal treatment; nor has she asserted facts supporting a First Amendment claim against Ellerbe in his individual capacity.  In the absence of an underlying federal claim, her Section 1983 and 1985 claims against him must also be dismissed.

McCrea's state law claims are unrelated to the final Board decision and thus not precluded by the PFRDA, but she asserts no facts to support a claim for intentional infliction of emotional distress because Ellerbe's denial of her request for accommodations does not rise to the required level of extreme or outrageous conduct.  *See Larijani*, 791 A.2d at 44.  Nor was it the reason for McCrea's involuntary retirement and therefore her tortious interference claim will be dismissed.  *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) ("To survive a

motion to dismiss on this claim, Browning must plead . . . intentional interference inducing or

causing a breach or termination of the relationship . . . .") (citation and internal quotation marks

omitted).[12]

### 7. Denise Gardner and Lela Jones

McCrea appears to claim that she received fraudulent information from Gardner and

Jones about her administrative appeal rights and that she later submitted written requests to both

women inquiring about the status of the POD decision, but received no response.  (SAC ¶¶ 100,

103, 105.)  She also appears to claim that her written requests quoted the fraudulent statements,

and the failure of both women to respond is further evidence of fraud.  (*See* ECF No. 98, Pls.

Resp. at 11–12.)  Finally, McCrea claims she was denied due process because Gardner and Jones

failed to follow procedures "established in the District of Columbia Municipal Regulations."  (*Id.*

at 12.)  She argues that both women violated her rights under the First Amendment (retaliation),

the Fifth Amendment  (procedural due process and equal protection), Sections 1981, 1983, and

1985, as well as her rights under common law theories of defamation, fraud, fraudulent

misrepresentation, tortious interference, and intentional infliction of emotional distress.  (*Id.*)

McCrea's allegations do not support individual liability for any of these causes of action

against these two defendants.  She does not claim that Gardner or Jones took actions that might

---

[12]   To the extent McCrea's tortious interference claim is based on EMS' alleged "interference"
with prospective employment, (*See* SAC COA ¶ 7(d), (f)), the claim fails because she makes no
factual allegations establishing that future employment was more than a "mere possibility."
*Herron v. Fannie Mae*, 861 F.3d 160, 172 (D.C. Cir. 2017) ("To have an actionable claim, [the
plaintiff] must show a probability of future contractual or economic relationship and not a mere
possibility.") (quoting *Havilah Real Prop. Servs., LLC v. VLK, LLC*, 108 A.3d 334, 351 (D.C.
2015)) (internal quotation marks omitted); *cf. Banneker Ventures, LLC v. Graham*, 798 F.3d
1119, 1134–35 (D.C. Cir. 2015) (finding that plaintiff demonstrated far more than a "hope" of a
future relationship where transportation agency "signed a contractually binding Term Sheet
preliminarily selecting [plaintiff] to develop property" above subway rail station) (internal
quotations omitted).

"deter a person of ordinary firmness in plaintiff's position from speaking," and therefore has not asserted a viable First Amendment retaliation claim.  *See Aref*, 833 F.3d at 258.  She does not allege any harm caused by mistreatment due to protected status, and thus her § 1981 and equal protection claims against Gardner and Jones will be dismissed.  And she has not asserted sufficient facts to support a claim against Gardner and Jones in their individual capacities because her generalized assertions that they failed to follow municipal procedures is insufficient. *See Elkins*, 690 F.3d at 561 ("To state a procedural due process claim, a complaint must suggest what sort of process is due.") (citation and internal quotation marks omitted).  Moreover, McCrea has not indicated how she was harmed by their alleged failure to follow municipal regulations.  *See Rangel v. Boehner*, 20 F. Supp. 3d 148, 159 (D.D.C. 2013), *aff'd*, 785 F.3d 19 (D.C. Cir. 2015) (to establish constitutional standing, a plaintiff must allege an injury in fact and a causal connection between the injury and the conduct about which she complains). Consequently, she has no federal claim to support her Section 1983 and 1985 claims, which will be dismissed.

McCrea's fraud and fraudulent misrepresentation claims against Gardner and Jones will also be dismissed because McCrea has not explained what misinformation the women allegedly provided, how she relied on the information, or how her reliance on the misinformation harmed her.  *See Bennett*, 377 A.2d 59 (D.C. 1977) (fraud claims require allegations that defendant made a false representation, with respect to a material fact, and the plaintiff took action in reliance thereof); *United States ex rel. Williams v. Martin–Baker Aircraft Co.,* 389 F.3d at 1256 (requiring plaintiff to plead "the time, place, and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud.").  Likewise, her purported defamation claim does not identify the false statements, nor does it allege that the

statements were published. *See Armstrong v. Thompson*, 80 A.3d 177, 184 (D.C. 2013) (quoting *Rosen v. American Israel Pub. Affairs Comm., Inc.*, 41 A.3d 1250, 1256 (D.C. 2012)) (discussing false statements versus statements of opinions); *Oparaugo v. Watts*, 884 A.2d 63, 73 (D.C. 2005) (discussing publication). McCrea's claim that the two defendants gave her incorrect information about her appellate rights does not rise to the level of outrageous or extreme conduct required for an intentional infliction of emotional distress claim. *See Larijani*, 791 A.2d at 44. Finally, McCrea does not indicate how the incorrect information interfered with her employment, and therefore her tortious interference claim fails. The court will therefore dismiss all the claims against Gardner and Jones in their individual capacities.

### 8. Raymond Gretz

Gretz was the Battalion Fire Chief who required McCrea to undergo "forced monitoring" with Dr. Raquel Gordon, whom McCrea alleges was unethical and used "abusive" tactics. (SAC ¶¶ 40, 55, 91; ECF No. 98, Pls Resp. at 20.) Before McCrea saw Dr. Gordon, she had seen another PFC psychologist, and Gretz denied McCrea's request for reassignment to a third psychologist, despite McCrea's complaints about Gordon. (ECF No. 98, Pls. Resp. at 20.)

In her opposition, McCrea cites the Restatement of Torts (Second) Section 314 "Duty to Act for the Protection of Others" and cases involving contract law, in support of her First Amendment (retaliation), Fifth Amendment (equal protection), Sections 1981, 1983, and 1985 claims, and her negligent infliction of emotional distress claim. (*See id*. at 20–21.) But McCrea provides no legal or factual basis to suggest that Gretz owed her a duty, that he may have breached any such duty, or that he violated her constitutional rights. Her negligent infliction of emotional distress claim also fails because she does not allege that Gretz's actions caused her to suffer physical harm or placed her in a zone of danger. *See David*, 436 F. Supp. 2d at 89 (citing

*Jones*, 589 A.2d at 424).  Accordingly, the claims against Gretz in his individual capacity will be dismissed.

### 9.  Josh Henline

Henline was McCrea's Equal Employment Opportunity (EEO) case manager.  McCrea's factual allegations against him are scant.  (SAC ¶¶ 13-14, 21, 23–25, 56, 58, 63, 78.)  She claims that after she reported her assault to Henline, he and EMS officials instructed her to report to PFC for evaluation.  (*Id.* ¶ 14; *see id.* ¶¶ 21, 23.)  Henline subsequently told her that the alleged attackers "were formally charged," and she sent him a letter asking to be informed of any proceedings.  (*Id.* ¶¶ 25, 58.)  McCrea claims that in May 2014, EMS notified her that it had received her request for accommodation and apparently recommended to Henline that the request be denied (McCrea does not indicate who made this recommendation).  (*Id.* ¶ 63.)  She claims that in August 2014, "the Interim Director of the Office of Disability Rights Alexis Taylor informed [McCrea] that . . . Henline . . . made representations to [Taylor] that the DCFEMS was aware of [McCrea's] . . . EEOC complaint and he had given her an exit letter," presumably to pursue her claims in court.  (*Id.* ¶ 78.)  McCrea also alleges that Henline sent her documents concerning FMLA leave, and "expressed veiled statements" that she should accept FMLA leave "to protect her from impending disciplinary actions."  (*Id.* ¶ 56.)

In her opposition, McCrea appears to fault Henline because he was aware EMS and non-EMS officials had recommended termination/non-POD classification and he participated in the "sham" disciplinary proceedings.  (ECF No. 98, Pls. Resp. at 16.)  She contends these allegations support claims for liability under the First Amendment (retaliation), the Fifth Amendment (equal protection), Sections 1981, 1983, and 1985, as well as under common law theories of fraud,

fraudulent misrepresentation, intentional infliction of emotional distress, and tortious interference.  (*Id.* at. 16–17.)

McCrea's federal claims against Henline cannot survive because it is not clear what adverse action she complains of, nor Henline's alleged role, and she does not allege unequal treatment.  She does not claim he made any misrepresentations or fraudulent statements upon which she relied.  She provides no factual support for her intentional infliction of emotional distress claim, nor does she allege facts suggesting Henline caused her termination.  Therefore, the court will dismiss all claims against him in his individual capacity.

### 10.  Captain Alan Noznesky

McCrea claims that the day after she reported her assault to Lieutenant Thornton, she also reported it to D.C. Fire Department Captain Noznesky, who took no action and ordered her not to pursue the matter.  (SAC ¶ 5.)   She also claims she convened a "trial board" against Noznesky and others, at which she and other witnesses testified.  (SAC ¶¶ 10, 68, 73.)  She contends that Noznesky is liable under the First Amendment (retaliation), Sections 1985, and 1986, as well under theories of fraud, negligence, and intentional infliction of emotional distress.  (*Id.*)

In her opposition, McCrea contends that Noznesky's failure to address her assault allegation violated unspecified EMS protocols and that he also participated in a "sham" disciplinary investigation.  (ECF No. 98, Pls. Resp. at 11.)  Without reference to any facts, she again relies on her Motion for Relief from Judgment in support of her claims.  (*Id.*)

McCrea provides no support for her claims against Noznesky.  Although she claims Noznesky failed to investigate her assault, McCrea alleges in her SAC that both EMS and MPD investigated the assault.  (*See, e.g.*, SAC ¶¶ 25, 79) (noting the alleged harassers were "formally charged," and trial boards convened against the alleged harassers).  She does not indicate how

she was harmed by Noznesky's alleged failure to investigate or follow EMS protocols.  Nor does McCrea explain the relevance of the "sham" disciplinary investigations.  She pleads no facts showing that Noznesky committed fraud against her, that he owed her a duty that he breached, or that his conduct was outrageous or extreme.  Therefore, McCrea's claims against him in his individual capacity will be dismissed.

### 11. William Sarvis

Sarvis, the EMS Director of Medical Services, was among those who received Cardwell's decision and signed the report recommending that the Board involuntarily retire McCrea.  (SAC ¶¶ 59, 62, 108.)  McCrea contends that Sarvis, in concert with EMS and PFC officials, was responsible for the Board's decision and is liable under the First Amendment (retaliation), the Fifth Amendment (equal protection), Sections 1981, 1983, and 1985, as well as for defamation of character, fraud, fraudulent misrepresentations, tortious interference, and intentional infliction of emotional distress.

McCrea's allegations do not suggest liability of any kind as to Sarvis.  She provides no factual support for her claims and appears to rely only on her disagreement with the final Board decision.  Accordingly, the court will dismiss all individual liability claims against Sarvis.

### 12. Gitana Stewart-Ponder

McCrea alleges that during her EEO administrative proceedings, Stewart-Ponder (former Diversity Manager) filed several motions to dismiss that McCrea contends were frivolous, vexatious and contained false information. (SAC ¶¶ 104; 114; ECF No. 98, Pls. Resp. at 15.) McCrea claims the motions constituted "procedural violations," but she does not explain what procedures were violated, nor does she proffer any facts to support her assertion that Stewart-Ponder's actions violated the First Amendment, Sections 1981, 1983, and 1985, or constituted

fraud, misrepresentation or intentional infliction of emotional distress.  Accordingly, the court will dismiss the individual liability claims against Stewart-Ponder.

## IV.  CONCLUSION

For the reasons set forth above, by separate order the court will GRANT in part and DENY in part Defendants' Motion to Dismiss.  Specifically, the court will

- GRANT with prejudice all HIPAA claims;

- GRANT with prejudice all claims against the D.C. Police and Firefighter's Retirement and Relief Board;

- DENY as to claims asserted against the District of Columbia for alleged violations of the ADA/Rehabilitation Act (reasonable accommodations), First Amendment (retaliation), § 1981, Fifth Amendment (equal protection), and Fifth Amendment (substantive and procedural due process); GRANT without prejudice as to the Sections 1983, 1985 and 1986;

-  GRANT with prejudice all claims asserted against the individual Defendants in their official capacities;

- GRANT with prejudice all ADA and Rehabilitation Act claims asserted against the individual Defendants in their individual capacities;

- GRANT with prejudice all medical malpractice, spoliation, fraud on the court, forgery and constructive discharge claims;

- GRANT with prejudice all state law claims brought against the District of Columbia and all state law claims brought against the individual Defendants for actions intertwined with the final Board decision; and

- GRANT without prejudice all remaining state law claims as to the individual Defendants in their individual capacities, except the intentional infliction of

emotional distress claim asserted against Travis Chase.

Date:  March 31, 2021

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge